752 A.2d 349 (2000)
331 N.J. Super. 445
Anthony D. MITCHELL, Plaintiff-Appellant,
v.
CHARLES P. PROCINI, D.D.S., P.A. and Charles P. Procini, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued April 12, 2000.
Decided June 12, 2000.
*350 Mark J. Molz, Hainesport, for plaintiff-appellant (Stephen Cristal, on the brief).
David M. Mayfield, Westmont, for defendants-respondents (Crawshaw, Mayfield, Turner, O'Mara, Donnelly & McBride, Cherry Hill, attorneys; Mr. Mayfield and Sharon M. Dostmann, on the brief).
Before Judges KING, CARCHMAN and LINTNER.
The opinion of the court was delivered by LINTNER, J.S.C. (temporarily assigned).
The central issue raised is whether the defense's inability to examine a plaintiff prior to the insertion of new dental implants constitutes substantial prejudice under R. 4:5-1 (b)(2), so as to preclude later joinder in a malpractice action where the complete medical records are available for review. We conclude that Dr. Procini's (defendant)[1] ability to present a defense was not substantially prejudiced. We reverse and remand to permit the motion judge to impose appropriate sanctions. We also reverse the motion judge's grant of summary judgment entering judgment of dismissal in favor of defendant, based upon the determination that plaintiff was fully compensated for his injuries.
This appeal arises from the trial judge's denial of plaintiff's motion for reconsideration of his grant of summary judgment in favor of defendant, Dr. Charles P. Procini, dismissing plaintiff's complaint. A full discussion of the underlying facts is set forth in this court's reported opinion in Mitchell v. Charles P. Procini, D.D.S., 315 N.J.Super. 557, 719 A.2d 201 (App.Div.1998). We provide a short synopsis of the facts relevant to this appeal.
On January 1, 1994, plaintiff, Anthony D. Mitchell, was injured in a bar brawl at Planet Cherry Hill. He suffered serious injuries to his mouth requiring significant dental work. Defendant examined plaintiff on January 27, 1994, and started treatment *351 culminating in the insertion of dental implants. Shortly after defendant started his treatment, plaintiff filed an amended complaint seeking damages against Planet Cherry Hill, its owners and employees (Cherry Hill defendants), asserting that his injuries were caused by the Cherry Hill defendants' negligent failure to separate two brawling patrons. Plaintiff's final office visit with defendant was on January 3, 1995. On June 1, 1995, at plaintiff's attorney's request, defendant Procini furnished a report concerning the treatment he rendered.
Thereafter, plaintiff was examined by Dr. Thomas Westcott, another dentist, who informed plaintiff that the two dental implants inserted by defendant needed to be replaced. In July 1995, Dr. Bradford Porter removed and replaced the implants. In August 1995, soon after the removal and replacement of the implants by Dr. Porter, plaintiff attended a voluntary arbitration hearing pursuant to R. 4:21A-1 and was awarded $90,000 in total damages. The arbitration panel assessed plaintiff's contributory fault at thirty-five percent. Plaintiff rejected the arbitration award and filed a demand for jury trial de novo. R. 4:21A-6(c).
On May 22, 1996, the scheduled trial date, plaintiff settled his claims against the Cherry Hill defendants for $125,000, eventually signing a release presumably preserving his rights against other potential tortfeasor defendants. On that same day, plaintiff filed a motion to file an amended complaint, seeking to add defendant, alleging malpractice. After answering the amended complaint, defendant moved for summary judgment and, under the thenexisting entire controversy rule, the motion judge dismissed the action against defendants, finding that plaintiff had failed to comply with the then-applicable entire controversy doctrine and notice requirements of R. 4:5-1(b)(2).
In a published opinion, we concluded that plaintiff's failure to provide notice of the contemplated addition of defendant to the case was inexcusable but found, based upon the record before us, that a determination could not be made that defendant's ability to present a defense had been substantially prejudiced by the delay within the meaning of R. 4:5-1(b)(2), as revised September 1, 1998. 315 N.J.Super. at 566, 719 A.2d 201. We remanded the case to the trial court to determine the issue of substantial prejudice. Ibid. On remand, the motion judge dismissed plaintiff's claim against defendant, finding that the defense's inability to examine plaintiff before insertion of the dental implants amounted to substantial prejudice and the prior settlement represented full compensation for plaintiff's injuries.
In finding the existence of substantial prejudice, the motion judge stated:
A timely lawsuit or a timely claim would have allowed for examination of the plaintiff's mouth by inby experts chosen byby Dr. Procini. It might have allowed for experts to take a look at this case on behalf of Dr. Procini before even Dr. Porter put in the two new implants in February of `96. Certainly at this late date the only possible thing that an expert could do on behalf of Dr. Procini would be to review somebody else's records.
The Court finds that there is ais a sufficient amount of prejudice to Dr. Procini to warrant the dismissal of this case. Thethe inability to have this gentleman's physical situation examined over this period of time is so prejudicial that it would frustrate thethe defense that could be raised by Dr. Procini. In short the only thing that anybody could do on his behalf is take a look at his records or have Dr. Procini himself testify and say "I did nothing wrong," which is not nearly as effective as having timely examination by independent experts.
Plaintiff contends that the motion judge erred in determining that defendant's ability to present a defense was substantially *352 prejudiced by plaintiff's failure to provide the notice required by R. 4:5-1(b)(2). We agree.
The entire controversy doctrine has continually evolved from common law. Prior to its articulation in article 6, section 3, paragraph 4 of the 1947 Constitution, it was recognized as a basic principle of common law. Cogdell v. Hospital Ctr., 116 N.J. 7, 15-16, 560 A.2d 1169 (1989); Smith v. Red Top Taxicab Corp., 111 N.J.L. 439, 440-41, 168 A. 796 (E. & A.1933). The Supreme Court in Cogdell, supra, recognized that the goals of the entire controversy doctrine were to foster judicial economy and efficiency by avoiding the waste and delay of piecemeal litigation and, at the same time, insure fairness to the parties. 116 N.J. at 23, 560 A.2d 1169. In acknowledging that fairness to the parties was "critical in the application of the entire controversy doctrine," the Supreme Court said: "In this modern era of litigation, particularly in the tort field with the advent of comparative negligence, it is highly desirable that all parties with a material interest ... should participate in its litigation." Ibid. (citations omitted).
Prior to Cogdell, the entire controversy doctrine applied to mandatory joinder of claims. Cogdell extended the entire controversy doctrine by applying it to mandatory joinder of parties in the appropriate circumstances. Id. at 26, 560 A.2d 1169. Shortly after the decision in Cogdell, R. 4:30A was adopted, which provided for preclusion in situations involving non-joinder of "claims or parties" were otherwise required to be joined under the entire controversy doctrine. The doctrine continued to evolve when the Supreme Court decided Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 338, 662 A.2d 536 (1995) (barring claims against parties not included in a prior action in another jurisdiction); Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 326-27, 662 A.2d 523 (1995) (barring a subsequent legal malpractice claim arising out of a suit involving a real estate development where the developer chose for tactical reasons not to join the attorney); DiTrolio v. Antiles, 142 N.J. 253, 279-80, 662 A.2d 494 (1995) (barring a physician from suing hospital staff members where they had not been joined in a prior suit against the hospital); and Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 298-99, 662 A.2d 509 (1995)(barring a subsequent legal malpractice suit where the attorneys sued were not included in a suit for reformation of a commercial lease they prepared).
The decisions in Mortgagelinq, Mystic Isle, DiTrolio, and Circle Chevrolet, spawned several diverse decisions dealing with the issue of non-joinder of parties, most notably attorneys alleged to have committed malpractice in the underlying litigation. Our Supreme Court finally resolved these issues concerning non-joinder of attorneys by holding that the entire controversy doctrine did not bar subsequent lawsuits for legal malpractice. Olds v. Donnelly, 150 N.J. 424, 428, 696 A.2d 633 (1997); Karpovich v. Barbarula, 150 N.J. 473, 476, 696 A.2d 659 (1997); Donohue v. Kuhn, 150 N.J. 484, 485, 696 A.2d 664 (1997). In reaching its determination in Olds, supra, the Court acknowledged the criticism leveled at the entire controversy doctrine and mandatory joinder of parties as well as the sanction of preclusion. 150 N.J. at 444-46, 696 A.2d 633. In its decision, the Court emphasized "that preclusion is a remedy of last resort." Id. at 446, 696 A.2d 633 (citing Gelber v. Zito Partnership, 147 N.J. 561, 565, 688 A.2d 1044 (1997)). While recognizing that the purpose of the doctrine is to encourage litigants to bring to the trial court's attention persons who should be joined, not to bar meritorious claims, the Court acknowledged the reality that there exists some attorneys who "have elected to conceal or withold claims against additional parties." Olds, supra, 150 N.J. at 447, 696 A.2d 633 (citations omitted).
The Court concluded by imparting to the Civil Practice Committee and its Entire *353 Controversy Doctrine Subcommittee the responsibility to examine the exemptions that should apply to mandatory joinder, as well as any amendments that should be made to R. 4:30A. Id. at 449, 696 A.2d 633. It identified the "need for a procedural device, such as a Rule 4:30A, to protect parties, the courts and the public from excessive and costly litigation." Id. at 447-48, 696 A.2d 633 (citations omitted). The Court stressed that "mandatory joinder should not be confused with mandatory preclusion." Id. at 448, 696 A.2d 633. In considering the sanction to be imposed for failure to give the required notice the Court said, "[i]f a remedy other than preclusion will vindicate the cost or prejudice to other parties and the judicial system, the court should employ such a remedy." Ibid. (citation omitted). Quoting from its decision in Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., the Court emphasized, " `[s]ince dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will suffice to erase the prejudice suffered by the non-delinquent party, or when the litigant rather than the attorney was at fault.' " Ibid. (quoting Abtrax Pharmaceuticals, Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 514, 655 A.2d 1368 (1995) (quoting Zaccardi v. Becker, 88 N.J. 245, 258, 440 A.2d 1329 (1982) (citations omitted))).
As a result of its decision in Olds, the Supreme Court, in September 1998, amended R. 4:30A, removing the previous provisions related to non-joinder of parties and limiting its application to non-joinder of claims. The Court also adopted R. 4:29-1(b), which permits the trial court, on its own motion, to "order the joinder of any person subject to service of process whose existence was disclosed by the notice required by R. 4:5-1(b)(2) or by any other means who may be liable to any party on the basis of the same transactional facts." The Court further revised R. 4:5-1(b)(2), which now provides:
Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to R. 4:29-1(b). If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the non-complying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

[R. 4:5-1(b)(2) (emphasis added).]
The revised version of R. 4:5-1(b)(2) thus "... addresses the issue of sanctions for failure to make the required disclosures. The court is authorized to impose monetary sanctions and/or counsel fees later incurred that would have been avoidable by disclosure." Pressler, Current N.J. Court Rules, comment 3 on R. *354 4:5-1 (1999). Preclusion is, therefore, available as a sanction in the limited circumstances where a lesser sanction is not sufficient to remedy the problem caused by an inexcusable delay in providing the required notice, thereby resulting in substantial prejudice to the non-disclosed party's ability to mount an adequate defense.
What constitutes substantial prejudice to a non-disclosed party's ability to defend a successive action under R. 4:5-1(b)(2) has not, heretofore, been addressed in any reported decision. We look for guidance to those decisions defining "substantial prejudice" in the context of the notice of late claim provisions of the Tort Claims Act, N.J.S.A. 59:8-9. In Blank v. City of Elizabeth, we described what was meant by substantial prejudice to a public entity resulting from the late filing of a notice of claim. 318 N.J.Super. 106, 114-15, 723 A.2d 75 (App.Div.), certif. granted, 160 N.J. 479, 734 A.2d 794, aff'd as modified, 162 N.J. 150, 742 A.2d 540 (1999). "Finally, a word about substantial prejudice.... Substantial prejudice in this context means substantial prejudice in maintaining one's defense. Generally, that implies the loss of witnesses, the loss of evidence, fading memories, and the like." Ibid. In Escalante v. Township of Cinnaminson, we observed that the delay alone does not serve to create substantial prejudice. 283 N.J.Super. 244, 253, 661 A.2d 837 (App.Div.1995) (citing Kleinke v. Ocean City, 147 N.J.Super. 575, 581, 371 A.2d 785 (App.Div. 1977)). Instead, it is the lack of availability of information which results from the delay that is, for the most part, determinative of the issue of substantial prejudice. Id. at 252-53, 661 A.2d 837. Thus, a party's "access to relevant information is largely dispositive of the `substantial prejudice' issue...." Lamb v. Global Landfill Reclaiming, 111 N.J. 134, 152, 543 A.2d 443 (1988).
In Torres v. Jersey City Med'l Ctr., we considered what constituted substantial prejudice to the defendant Medical Center, as a result of a late notice of claim arising out allegations of malpractice. 140 N.J.Super. 323, 327-28, 356 A.2d 75 (Law Div.1976), cited with approval in Lamb, supra, 111 N.J. at 152, 543 A.2d 443. Following removal of her ovaries, Casilda Torres was informed by doctors that her ovaries had been damaged as a result of exposure to x-ray treatment. Id. at 325, 356 A.2d 75. She had a difficult time finding counsel willing to take on her case. Ibid. Counsel was finally found approximately ten months after the cause of action accrued. Ibid. In granting the plaintiff's application to file late notice, the court determined that the Medical Center had not been substantially prejudiced because the facts were well documented and a complete record of the plaintiff's treatment was available. Id. at 327-28, 356 A.2d 75.
Likewise, the dental records concerning plaintiff's subsequent diagnosis by Dr. Westcott and subsequent implant surgery by Dr. Porter are available to defendant. Defendant's argument that plaintiff's delay in disclosing his contemplated malpractice action completely prohibits him from mounting an adequate defense is misplaced. We agree with defendant's observation that, had plaintiff notified the court of the contemplated malpractice action when plaintiff first became aware of the need to replace his dental implants, defendant might have had an opportunity to have an expert examine plaintiff before the subsequent implant surgery was performed. Where we part company is defendant's assertion that the facts support the conclusion that the lost opportunity to investigate, prior to Dr. Porter's surgery, prevents defendant from retaining an expert to present a defense to plaintiff's malpractice allegations.
The record does not indicate that any of the treatment, surgical, or x-ray records, maintained by Drs. Procini, Westcott, and Porter, have been destroyed or are otherwise unavailable as a result of the delay caused by plaintiff's non-disclosure. Furthermore, defendant himself, as a result of *355 his own treatment and corresponding observations, had the opportunity that the defense now argues has been lost; that is, the opportunity to see plaintiff's condition after the insertion of the first set of implants and before their subsequent replacement by Dr. Porter. Moreover, it is common knowledge that the vast majority of medical malpractice cases are filed well after the injuries sustained by a doctor's negligence have been discovered and often remedied. The defense in most medical malpractice cases requires the retention of an expert witness, who must necessarily review hospital and doctors records after the fact, to give an opinion concerning whether a defendant deviated from the applicable standard of care on a reconstructed medical record.
The record before us fails to disclose any specific difficulties in mounting a defense to plaintiff's medical malpractice allegations significantly different from that normally encountered. While defendant was prevented from having an expert investigate plaintiff's condition prior to the removal and replacement of the implants, his ability to mount a defense was not substantially prejudiced by plaintiff's nondisclosure. We conclude that the sanction of preclusion was not warranted. We remand to permit the motion judge to impose the appropriate monetary sanctions, including attorney's fees later incurred, as a result of what we have previously described as plaintiff counsel's inexcusable violation of the duty of disclosure prescribed by R. 4:5-1 (b)(2).
Defendant next contends that plaintiff is not entitled to proceed against him because the $125,000 settlement represented compensation for all injuries sustained and plaintiff is not entitled to any additional damages. At oral argument, plaintiff's counsel conceded that plaintiff had been satisfied to the extent of the settlement with the Cherry Hill defendants and would not be entitled to collect additional damages, unless the verdict attributed to defendant's negligence exceeded $125,000.
In Ciluffo v. Middlesex General Hosp., we recognized that an initial tortfeasor is potentially liable for all the natural and proximate injuries that flow from the tort, including the consequences of subsequent medical malpractice arising from treatment for the injuries sustained. 146 N.J.Super. 476, 482, 370 A.2d 57 (App.Div. 1977) (citing Knutsen v. Brown, 96 N.J.Super. 229, 235, 232 A.2d 833 (App.Div. 1967)). We further observed that to avoid duplicating compensation paid to a plaintiff, the successive tortfeasor may receive a credit for part or all of the payment made by the initial tortfeasor. Id. at 483, 370 A.2d 57. The manner by which a prior settlement is credited to a subsequent malpractice damage verdict against successive tortfeasor was explained as follows:
If the settlement exceeds plaintiff's total provable damages she would be entitled to no further recovery from [the doctor]. If the settlement exceeds the amount of her provable damages minus the damages caused by [the doctor], the amount of such excess should be credited against the damages assessed solely for the harm caused by [the doctor]. If the settlement is less than the amount of her total provable damages minus the damages caused solely by [the doctor], plaintiff should recover the full amount of the damages assessed against [the doctor] alone for the pain and suffering allegedly endured by her during the delay in treatment.... [Id. at 482-83, 370 A.2d 57 (citations omitted).]
Here, defendant argued and the motion judge found that plaintiff had already received a full recovery for his injuries because of the settlement with the Cherry Hill defendants. As we stated in Ciluffo, "[w]hen a plaintiff settles with the first of successive independent tortfeasors we usually do not know whether that settlement constituted payment in full for all claims." Id. at 482, 370 A.2d 57. While the initial tortfeasor is potentially liable for the injuries *356 caused, including those stemming from the subsequent malpractice, the comparative liability that might be attributed to plaintiff's conduct in arriving at a settlement figure makes it impossible to determine whether plaintiff received full compensation for the acts of the successive tortfeasor. The settlement with the Cherry Hill defendants may have taken into consideration plaintiff's potential comparative fault. Usually, comparative fault is not an issue in medical malpractice actions, though post-malpractice conduct, such as the failure to follow a doctor's instructions, may lead to a defense of mitigation of damages. See, e.g., Ostrowski v. Azzara, 111 N.J. 429, 441, 545 A.2d 148 (1988); Bryant v. Calantone, 286 N.J.Super. 362, 370, 669 A.2d 286 (App.Div.1996).
Here, plaintiff's conduct was such that the arbitration award preceding the settlement with the Cherry Hill defendants assessed plaintiff with thirty-five percent contributory fault. Without a jury determination of full damages, it is impossible to determine to what extent, if any, the settlement with the Cherry Hill defendants took into consideration plaintiff's contributory fault. We, therefore, conclude that plaintiff is entitled to have a jury determine the issue of full compensation, as well as that amount attributed to defendant's alleged malpractice.
We reverse the judgment of dismissal; we remand for further proceedings consistent with this opinion.
NOTES
[1] Charles P. Procini, DDS, P.A. and Charles P. Procini, individually, are named as defendants. For the purpose of this opinon they are referred to in the singular as defendant or Dr. Procini.