988 A.2d 594 (2010)
412 N.J. Super. 1
KENT MOTOR CARS, INC., d/b/a Honda of Princeton, Sports and Specialist Cars, Inc. and Robert Burt, Plaintiffs-Appellants,
v.
REYNOLDS AND REYNOLDS CO., and Universal Underwriters Group, Defendants-Respondents, and
New Jersey Coalition of Automotive Retailers, Inc., and Automatic Data Processing, Inc., Defendants.
Docket No. A-5246-07T3
Superior Court of New Jersey, Appellate Division.
Argued October 6, 2009.
Decided February 9, 2010.
*596 Jeffrey M. Pollock, argued the cause for appellants (Fox Rothschild, attorneys; Mr. Pollock, of counsel and on the briefs; Joel M. Ferdinand, Lawrenceville, on the briefs).
Keena M. Hausmann, Newark, argued the cause for respondent Reynolds and Reynolds Co. (Latham & Watkins, attorneys; Mark Mester of the Illinois bar, admitted pro hac vice, of counsel; Ms. Hausmann, on the brief).
John S. Fetten, Bridgewater, argued the cause for respondent Universal Underwriters Group (Montgomery, Chapin & Fetten, attorneys; Mr. Fetten, on the brief).
Before Judges SKILLMAN, GILROY and SIMONELLI.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In 1998, the Supreme Court adopted a series of rule amendments that eliminated the former party joinder requirements of the entire controversy doctrine and instead imposed a new requirement that a party provide notice in its first pleading of the names of other potentially liable parties. See R. 4:5-1(b)(2); R. 4:29-1(b); R. 4:30A. If a party fails to comply with this notice requirement, one of the amended rules authorizes a court to impose an appropriate sanction, including dismissal of a subsequent action against a party whose existence was not disclosed. The primary issue presented by this appeal is whether the trial court properly invoked the sanction of dismissal under the circumstances of this case. This appeal also involves an insurance coverage issue, which is discussed in section III of the opinion.

I.
Plaintiffs Kent Motor Cars d/b/a Honda of Princeton (Honda of Princeton) and Sports and Specialist Cars (Sports) (hereinafter sometimes referred to collectively as the Burt companies) are automobile dealers. Plaintiff Robert Burt is the principal in both automobile dealerships. Defendant Reynolds and Reynolds sells business forms. In 2002, the Burt companies used forms printed by Reynolds in connection with their sale of cars.
On June 6, 2002, Henry Wilson signed a purchase order form printed by Reynolds for the purchase of a 2002 car from Honda of Princeton. This form provided for imposition of charges for registration and title and a "documentary fee" consisting of an "M.V. Messenger Service" charge, a "Clerical Fee," and an "Admin. Fee." Typed within a box at the bottom of the form were eight lines of small print, which included the following statement:

*597 YOU HAVE THE RIGHT TO A WRITTEN ITEMIZED PRICE FOR EACH SPECIFIC DOCUMENTARY AND PRE-DELIVERY SERVICE WHICH IS TO BE PERFORMED. THE AUTOMOTIVE DEALER MAY NOT CHARGE FOR PRE-DELIVERY SERVICES FOR WHICH THE AUTOMOTIVE DEALER IS REIMBURSED BY THE MANUFACTURER. ...
On July 25, 2003, Wilson filed a putative class action against Burt individually and the Burt companies. Wilson's complaint claimed that the Burt companies had violated the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20, and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18, by overcharging for title and registration fees and charging "documentary fees" for services that were not performed. The Wilson complaint also claimed that the previously quoted statement at the bottom of the purchase order violated a subsection of the Automotive Sales Practice regulations adopted by the Division of Consumer Affairs, which prescribes a minimum ten-point font size for such provisions. N.J.A.C. 13:45A-26B.2(a)(2).
Although the purchase order form signed by Wilson indicated that it had been printed by Reynolds, Wilson did not join Reynolds as a defendant in the putative class action. The answer filed on behalf of the Burt companies also did not include a third-party complaint against Reynolds, and the Burt companies' accompanying case information statement indicated that they did not anticipate joining any additional parties.
In late 2003, after the Wilson action was filed, the sales manager at Honda of Princeton communicated with the New Jersey Coalition of Automotive Retailers (NJCAR), of which the Burt companies are members, regarding the Reynolds forms. In response, NJCAR informed the sales manager that the forms the Burt companies had been using contained language that was not in ten-point font, as required by the Automotive Sales Practice regulation. Based on this advice, the Burt companies began using a different purchase order form prepared by NJCAR that satisfies the ten-point font requirement.
The trial court certified the Wilson action as a class action, and in June 2005, the court granted plaintiffs' motion for a partial summary judgment on liability, which ruled that the Burt companies had overcharged members of the Wilson class for registration and title fees, in violation of the Consumer Fraud Act, and failed to provide required disclosures on purchase order forms in the ten-point font size required by N.J.A.C. 13:45A-26B.2(a)(2).
Shortly thereafter, the Burt companies substituted new counsel, who submitted a settlement proposal to counsel for the Wilson class on August 25, 2005. The issue of Reynolds's joinder in the action was raised for the first time in this settlement proposal, which stated in pertinent part:
Reynolds & Reynolds probably should have been imple[a]ded into this action and we intend upon doing so shortly. Our commitment to settling this matter in part hinges upon your commitment that plaintiffs will consent to our imple[a]ding Reynolds & Reynolds (although frankly, I'd rather litigate against them in an independent action but may be required to bring them in as a third-part[y] defendant as a result of whatever is left of the entire controversy doctrine.)
Counsel for the Wilson class responded to the Burt defendants' settlement proposal by a letter dated August 29, 2005, which included the following comments regarding *598 the possibility of the late joinder of Reynolds:
Frankly, consideration of the possibility of bringing Reynolds & Reynolds into this litigation should have been made a very long time ago. If you want to bring them into this litigation at this late stage of the game, that is your choice, but keep in mind that it drastically changes our position regarding settlement.... If by imple[a]ding Reynolds & Reynolds you would be seeking a cash contribution from them due to their error or omission regarding the Notice type size on the buyers['] orders your client purchased from them, we would seek that additional cash to be paid directly to class members. ...
In early September, the Wilson class and the Burt companies negotiated a settlement of the Wilson action without joinder of Reynolds.
While the documents to formalize the settlement of Wilson were being circulated, on September 16, 2005, the Burt companies filed this action against Reynolds asserting that Reynolds had sold them pre-printed order forms that did not comply with applicable consumer protection statutes and regulations and that, as a result, the Burt companies had incurred damages and defense costs in the Wilson class action, for which it sought indemnification or contribution.[1] This complaint included a Rule 4:5-1(b)(2) certification, which indicated that the "matter in controversy" was related to the then pending Wilson action.
By an amended complaint, the Burt companies joined Universal Underwriters Group, which provided insurance to the Burt companies, as a defendant to the action. In separate counts, the Burt companies claimed that Universal had breached its obligations under those policies for indemnification of the costs of defense of the Wilson class action and the amount paid in settlement of that action. Because the facts relevant to the Burt companies' claims against Universal are completely distinct from the facts relevant to their claims against Reynolds, we defer discussion of those facts to section III of this opinion.
On November 8, 2005, approximately two months after this action was filed, the Wilson plaintiffs and Burt companies completed execution of the documents required to formalize their settlement. On March 8, 2006, the trial court in the Wilson class action preliminarily approved the proposed settlement, and on June 12, 2006, the court entered final judgment.
The Burt companies' claims against Reynolds were brought before the trial court on a motion by Reynolds for summary judgment dismissing the complaint based on the Burt companies' failure in the Wilson action to comply with the notice requirements of Rule 4:5-1(b)(2) and a cross-motion by the Burt companies for partial summary judgment. The court granted Reynolds's motion to dismiss the parts of plaintiffs' complaint directed at Reynolds. In concluding that Reynolds had been "substantially prejudiced" by the Burt companies' failure to comply with the notice requirements of Rule 4:5-1(b)(2), which is a prerequisite for dismissal of a successive action based on such a failure, the trial court stated in part:
[B]y failing to comply with R. 4:5-1, the Dealerships effectively deprived Reynolds of a fair opportunity to be heard in motion practice in Wilson that resulted *599 in dispositive court decisions bearing directly on Reynolds' rights and obligations. In his bench decision of June 10, 2005, [the trial judge in the Wilson action] found that the notices in the Reynolds forms were printed in 7.5  as opposed to 10  point font, and were therefore legally deficient under N.J.A.C. 13:45A-26B.2(a)(2)(iii). ... As Reynolds was not a party to the Wilson matter, it did not have a reasonable opportunity to be heard on the latter issue. Reynolds must now contend with the precedential effect of [the trial judge's] decision [in that action]. ... It is impossible to know what effect participation by Reynolds might have had on those findings, or how a different disposition of the summary judgment motion in the Wilson matter might have altered the outcome of settlement negotiations.... As a consequence this court is satisfied that Reynolds has suffered substantial prejudice as a result of the Dealerships' noncompliance with R. 4:5-1 and that the aims of judicial finality and consistency will be undermined if the indemnification action is allowed to proceed.

II.
In Cogdell v. Hospital Center at Orange, 116 N.J. 7, 13-28, 560 A.2d 1169 (1989), the Supreme Court expanded the entire controversy doctrine, which formerly had required only the compulsory joinder of transactionally-related claims, to also require the compulsory joinder of all parties who have a material interest in a controversy. Following Cogdell, the Court struggled with determining the circumstances under which the party joinder requirement should apply, see, e.g., Harley Davidson Motor Co. v. Advance Die Casting, Inc., 150 N.J. 489, 496-503, 696 A.2d 666 (1997); Olds v. Donnelly, 150 N.J. 424, 435-43, 696 A.2d 633 (1997); Joel v. Morrocco, 147 N.J. 546, 553-56, 688 A.2d 1036 (1997); Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 342-48, 662 A.2d 536 (1995); Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 289-303, 662 A.2d 509 (1995), and prominent legal scholars and leading civil litigators severely criticized this expansion of the entire controversy doctrine. See Symposium, Entire Controversy Doctrine, 28 Rutgers L.J. 1 (1996).
In Olds, supra, 150 N.J. at 444-49, 696 A.2d 633, the Court took note of these criticisms and directed the Civil Practice Committee to make recommendations regarding the continuation of the party joinder requirement of the entire controversy doctrine. The Committee responded by submission of a report that recommended elimination of the party joinder requirement and its replacement by an amendment to Rule 4:5-1(b)(2), which would expand a litigant's obligation to disclose the names of other potentially liable persons to the trial court and other parties to the action. 1998 Report of the Supreme Court Committee on Civil Practice 122-35 (hereafter Committee Report).
Most pertinent to this appeal, the Committee Report concluded that a trial court should be authorized to dismiss a subsequent action brought against a party whose name was not disclosed to the court and other parties as a remedy of last resort in extraordinary circumstances:
[T]he Committee concluded that to assure compliance with the notice obligations imposed by Rule 4:5-1(b)(2), trial courts should be authorized to impose sanctions for violations. However, consistent with the Court's view in Olds that "preclusion is a remedy of last resort," 150 N.J. at 446, 696 A.2d 633, the Subcommittee concluded that an action should be dismissed because of a party's *600 violation of Rule 4:5-1(b)(2) only if the violation was "egregious" and "the right of the unnamed party to defend the successive action has been substantially prejudiced by not having been joined in the prior action." Except in those extraordinary circumstances, a court should impose only a lesser sanction, such as "the imposition upon the defaulting party of litigation expenses which could have been avoided by compliance with this rule."
[Committee Report at 127-28.]
Except for a word change that is not relevant to this appeal,[2] the Court adopted the Committee's recommended rule amendment that requires notice of the names of other potentially liable parties to be given to the trial court and the other parties to the action and authorizes sanctions for any violation of this notice requirement.
Rule 4:5-1(b)(2), as amended in 1998, provides:
(b) Requirements for First Pleadings.
. . . .
(2) Notice of Other Actions and Potentially Liable Persons. Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to R. 4:29-1(b). If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the non-complying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable *601 and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

[Emphasis added.]
Thus, under the final sentence of Rule 4:5-1(b)(2), a court may not dismiss a subsequent action based on a party's failure to comply in a prior action with the notice requirements of the rule unless it finds that: (1) the action is a "successive action"; (2) the failure to provide notice of other potentially liable parties was "inexcusable"; and (3) the undisclosed party's right to defend the successive action has been "substantially prejudiced" by that failure.
The Burt companies argue that this is not a "successive action" because it was filed approximately nine months before final approval of the settlement in Wilson, during which time Reynolds had notice of Wilson and could have sought to intervene. In support of this argument, the Burt companies rely upon our holding in Kaselaan & D'Angelo Associates v. Soffian, 290 N.J.Super. 293, 675 A.2d 705 (App.Div. 1996), that "the entire controversy doctrine only precludes successive suits involving related claims. It does not require dismissal [of a second filed action] when multiple actions involving the same or related claims are pending simultaneously." Id. at 299, 675 A.2d 705 (citation omitted); accord Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887-89 (3d Cir. 1997). However, we question whether a party who has failed to provide the notice of other potentially liable parties required by Rule 4:5-1(b)(2) should be totally absolved of any of the sanctions authorized by that rule simply because that party files an independent action against the undisclosed party before entry of final judgment in the first filed action. In any event, it is unnecessary for us to determine the meaning of "successive action" as used in Rule 4:5-1(b)(2) because we conclude that Reynolds has not shown that it was "substantially prejudiced" by the Burt companies' failure to give the required notice of other potentially liable parties.
Before discussing our reasons for reaching this conclusion, we note our agreement with Reynolds's argument that the Burt companies' failure to comply with the notice requirement of Rule 4:5-1(b)(2) was "inexcusable." The Burt companies knew or should have known by, at the latest, December 2003, when NJCAR informed the sales manager for Honda of Princeton that the Reynolds form did not comply with the ten-point font requirement of N.J.A.C. 13:45A-26B.2(a)(2), that they had potential indemnification or contribution claims against Reynolds. Therefore, they could and should have given the required Rule 4:5-1(b)(2) notice to the Wilson plaintiffs and the court at that time.
We turn now to the requirement that a party whose name was not disclosed in a prior action show "substantial prejudice" as a result of that failure to be entitled to dismissal of a successive action. See Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J.Super. 229, 242-44, 806 A.2d 810 (App.Div.), certif. denied, 175 N.J. 170, 814 A.2d 635 (2002); Mitchell v. Procini, 331 N.J.Super. 445, 453-56, 752 A.2d 349 (App.Div.2000). We note initially that Rule 4:5-1(b)(2) does not require notice of an action to be given to other potentially liable parties. The rule only requires such notice to the other named parties to the action and the trial court. The trial court then must decide whether to "require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or [to] compel joinder pursuant to R. 4:29-1(b)." R. 4:5-1(b)(2).
*602 We are unaware of any practice on the part of trial judges generally, or the trial judge in the Wilson action specifically, to require joinder of, or notice to, other potentially liable parties who are disclosed in a Rule 4:5-1(b)(2) certification. Consequently, it is conjectural whether the trial judge in Wilson would have joined or required notice of the action to be given to Reynolds if the Burt companies had provided timely notice of the name of this other potentially liable party.
It is also conjectural whether Reynolds would have moved to intervene in the action if it had received such notice or instead elected to stand on the sidelines in the hope that the Wilson plaintiffs' claims would be resolved in a manner that would not subject Reynolds to liability. We note in this respect that when Reynolds received notice of the Wilson action in September 2005 as a result of service of the complaint in this action, Reynolds did not move to intervene in Wilson or to consolidate this action with Wilson. We appreciate that Reynolds's strategic considerations in determining whether to seek intervention in Wilson may have been different during the period between September 2005 and June 2006 than would have been the case in December 2003. However, Reynolds's decision not to intervene in the Wilson action when it ultimately became aware of its pendency raises doubt whether it would have sought intervention even if it had received earlier notice.
Furthermore, Reynolds has not shown that it will be placed in any worse position defending the Burt companies' claims in this separate action than it would have been in defending those claims in the Wilson action. The Burt companies' claims are set forth in broad, scattergun form in their complaint and have not been briefed in this appeal. Therefore, we do not undertake to consider the merits of those claims. We only note that Reynolds would not be bound by the finding of the Wilson trial judge that the form Reynolds sold to the Burt companies violated N.J.A.C. 13:45A-26B.2(a)(2), because Reynolds was not a party to that action. See Brunetti v. Borough of New Milford, 68 N.J. 576, 587, 350 A.2d 19 (1975). We also note that the conformity of the Reynolds form with N.J.A.C. 13:45A-26B.2(a)(2) appears to be a fairly straightforward legal question.
Reynolds argues that it has been prejudiced by the Burt companies' destruction or loss of certain notes relevant to the apportionment of the settlement amount between the Wilson plaintiffs' claims predicated on the Reynolds form and their other claims. However, because the Burt companies would have the burden of proof on the apportionment issue, see Cent. Motor Parts Corp. v. E.I. duPont de Nemours & Co., 251 N.J.Super. 5, 12, 596 A.2d 759 (App.Div.1991), it would appear that the Burt companies would be more likely than Reynolds to be prejudiced by the loss of any such notes. In any event, if the trial court finds that the Burt companies destroyed or are otherwise responsible for the loss of notes relevant to the issue of apportionment, and that Reynolds has been prejudiced by the unavailability of this evidence, it may provide Reynolds with appropriate relief short of dismissal of the Burt companies' claims. See Rosenblit v. Zimmerman, 166 N.J. 391, 401-03, 766 A.2d 749 (2001).
Therefore, in view of the uncertainties as to whether the Burt companies' timely compliance with their notice obligations under Rule 4:5-1(b)(2) in Wilson would have resulted in Reynolds's joinder or intervention, and the lack of any basis for finding that Reynolds will be placed in a worse position defending the Burt companies' claims in this action than in Wilson, *603 we conclude that the record does not support a finding that Reynolds was "substantially prejudiced" by the Burt companies' failure to comply with the notice obligations under Rule 4:5-1(b)(2). Accordingly, we reverse the summary judgment dismissing the Burt companies' claims against Reynolds.

III.
We turn next to the Burt companies' insurance coverage claims. Universal issued separate policies to Honda of Princeton and Sports. Each policy provided coverage for "Statute and Title Errors and Omissions" (STEO). Each policy also provided coverage for "Customer Complaint Defense" (CCD). This latter coverage was limited to $25,000 for each dealership. Universal paid the full $50,000 of CCD coverage to Honda of Princeton and Sports. Thus, the Burt companies' appeal from the dismissal of their claims against Universal is limited to the STEO coverage.
The part of the policy provisions describing the scope of the STEO coverage states:
"STATUTE AND TITLE E & O" means any claim or SUIT filed against YOU, ... by or on behalf of:
(a) a customer arising out of GARAGE OPERATIONS, because of an alleged violation during the Coverage Part period, of any federal, state or local:
. . . .
(2) truth-in-lending or truth-in-leasing law....
Therefore, the question is whether the complaint in Wilson asserted any claim based on "an alleged violation ... of any federal, state or local ... truth-in-lending or truth-in-leasing law[.]"
The Wilson complaint was based on the Consumer Fraud Act, the Automotive Sales Practices regulations adopted by the Division of Consumer Affairs, and the Truth-in-Consumer Contract, Warranty and Notice Act. These are all general consumer protection laws rather than statutes and regulations directed specifically at truth-in-lending or leasing. Moreover, the allegations of the Wilson complaint were that the Burt companies had charged excessive title and registration fees as well as documentary fees for services that were not performed and that they had failed to inform their customers of their right to an itemized price for each documentary and predelivery service in the ten-point font mandated by N.J.A.C. 13:45A-26B.2(a)(2). None of the Wilson plaintiffs' allegations were directed at the manner in which the Burt companies leased cars or provided financing. Instead, their allegations were directed solely at the Burt companies' general sales practices. Although the plaintiff class in Wilson consisted of not only persons who purchased but also persons who leased cars, the reference in the complaint to persons who leased only constituted part of the definition of the class. Therefore, the trial court correctly concluded that the STEO coverage provided to the Burt companies for any alleged violation of a "truth-in-lending or truth-in-leasing law" did not provide coverage for the Wilson action.
The Burt companies assert, as an alternative ground for requiring Universal to indemnify them for the costs of the defense and settlement of the Wilson action, that Universal is estopped from denying coverage because it assumed control over the defense of the Wilson action without issuing a reservation of rights letter. Shortly after receiving service, a Burt company employee sent a copy of the Wilson complaint to Universal. In response, Universal sent the Burt companies a letter dated October 6, 2003, which specifically *604 stated that their coverage was limited to $25,000 CCD coverage for defense costs and that any additional defense costs as well as all "damages assessed against you" would be the Burt companies' responsibility:
Your attention is directed to the fact that the insurance coverage provided to you for the allegations made in this suit is under your Customer Complaint Defense as is limited to cost of defense only, to a maximum cost of Twenty Five Thousand (25,000). All court costs and damages assessed against you are your responsibility. Your insurance does not provide coverage for court costs or damages assessed. Any amount payable by the company for defense costs will be subjected to a deductible amount of Two Thousand Dollars ($2000.00). All defense costs above the limits set forth in the policy and the deductible amount are your responsibility.
The Burt companies did not question this express limitation upon Universal's undertaking to defend the Wilson action, and Universal did not send any additional communication to the Burt companies or take any other action that could be construed to change the position taken in the October 6, 2003 letter that its obligation was limited to providing up to $25,000 in defense costs (subsequently increased to $50,000 because the Burt companies had coverage under two separate Universal policies). Therefore, the October 6, 2003 letter constituted an express reservation of rights, to which the Burt companies implicitly agreed, which remained in effect throughout the period of Universal's defense of the Wilson action. See Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 126, 179 A.2d 505 (1962).
Accordingly, we reverse the summary judgment in Reynolds's favor and remand the case for further proceedings on the Burt companies' claim against that defendant. We affirm the summary judgment dismissing the Burt companies' claims against Universal.
NOTES
[1] This complaint and an amended complaint also asserted similar claims against NJCAR and Automatic Data Processing, another provider of business forms, but these defendants were later dismissed from the action.
[2] The proposed amendment to Rule 4:5-1(b)(2) provided that a court could dismiss a successive action based on a party's failure to comply with the rule's notice requirements only if the failure was "egregious" and the undisclosed party's right to defend the successive action had been "substantially prejudiced." The Court substituted "inexcusable" for "egregious" in the Committee's rule proposal. Because we conclude that the Burt companies' failure to comply with the Rule 4:5-1(b)(2) notice requirements was "inexcusable," but that Reynolds failed to show it was "substantially prejudiced" by that failure, there is no need to consider the effect of the Court's substitution of "inexcusable" for "egregious."

The only other noteworthy change the Court made to the Committee's rule proposals relating to the entire controversy doctrine was adoption of a proposal by the Entire Controversy Doctrine Subcommittee, which the Civil Practice Committee as a whole had not endorsed, that Rule 4:29-1(b) be amended to authorize trial courts to compel joinder of parties disclosed in accordance with Rule 4:5-1(b)(2) "in exceptional circumstances." Committee Report at 127. This amendment, which is found at Rule 4:29-1(b), is not at issue in the present appeal.