# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1606-20

C.B.R. and R.E.R., JR., h/w,

      Plaintiffs-Appellants,

v.

HACKENSACK MERIDIAN
HEALTH SOUTHERN OCEAN
MEDICAL CENTER, RWJ
BARNABAS HEALTH
PSYCHIATRIC EMERGENCY
SCREENING SERVICE AT
MONMOUTH MEDICAL
CENTER SOUTHERN CAMPUS,[1]
ANNE MARIE SACCO,
individually, and ANITA
RAINFORD,[2] individually,

      Defendants-Respondents.

_____

Argued April 26, 2022 – Decided October 18, 2022

Before Judges Currier and DeAlmeida.

---

[1] Incorrectly pled as RJW Barnabas Health Psychiatric Emergency Screening Service at Monmouth Medical Center Southern Campus.

[2] Incorrectly pled as Anita Rainfold.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1160-19.

Gary R. Katz argued the cause for appellant C.B.R.

Russell J. Malta argued the cause for respondents Hackensack Meridian Health Southern Ocean Medical Center and Anne Marie Sacco (Orlovsky Moody Schaaff Conlon Bedell McGann & Gabrysiak, attorneys; Erin A. Bedell and Russell J. Malta, of counsel and on the brief).

John M. Hockin, Jr. argued the cause for respondents RWJ Barnabas Health Psychiatric Emergency Screening Service at Monmouth Medical Center Southern Campus and Anita Rainford (Ronan, Tuzzio & Giannone, attorneys; John M. Hockin, of counsel and on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Plaintiff C.B.R. (Carla)[3] appeals from the January 22, 2021 order of the Law Division dismissing her complaint with prejudice pursuant to R. 4:5-1(b)(2) and the entire controversy doctrine. We reverse.

I.

Carla alleges the following facts, which we assume to be true for purposes of this appeal. Carla is married to plaintiff R.E.R., Jr. (Roland). In May 2017,

---

[3] We use initials and pseudonyms to identify the parties and witnesses to protect the confidentiality of Carla's medical records.

Roland was bitten by an unvaccinated cat belonging to their neighbor G.B. (Gail). Just prior to the incident, Roland received a kidney transplant and was on anti-rejection medication. As a result, it was not clear if he would tolerate the anti-rabies treatment protocol for the cat bite.

An Ocean County Animal Control official ordered Gail to quarantine the cat. She failed to comply. Gail instead intentionally, and on a regular basis, fed the cat along the property line between her residence and Carla and Roland's home in order to antagonize them.

On June 3, 2017, Carla and Roland arrived home to find an effigy of a cat hanging on the mailbox of their neighbors R.C. (Robert) and J.C. (Jane). Carla and Gail thereafter engaged in a heated argument about Gail's cat and the effigy. During the argument, Carla told Gail that if anything happened to Roland as a result of the cat bite, Gail "would be dead meat." Carla claims this statement was not meant as a threat of physical harm, but as "an innocuous warning" to Gail that she would be held responsible in a civil suit for any harm to Roland from the cat bite.

Later that evening, Gail called the Little Egg Harbor Township Police Department (LEHPD) to report that Carla had "threatened to kill her." A police report was generated, but never acted on because Gail refused to sign it.

A-1606-20

The following morning, Carla and Roland got into a verbal argument with Robert and Jane, who called the LEHPD. Officer Christopher Costa responded to the scene. Robert and Jane told Costa that during the argument Carla made terroristic, suicidal, or homicidal threats. After viewing a video recording of the altercation on a cellphone, Costa transported Carla to defendant Hackensack Meridian Health Southern Ocean County Medical Center (Meridian Health) for psychiatric emergency screening services and evaluation.

A police report indicates that "neighbors stated that [Carla] threatened to shoot them or herself and has been acting in an erratic manner the past several months." Although the report states that Carla was taken into custody for harassment, no criminal charges were filed against her.

At the hospital, Carla was screened by defendant Anne Marie Sacco, an employee of both Meridian Health and defendant RWJ Barnabas Health Psychiatric Emergency Screening Service at Monmouth Medical Center Southern Campus (RWJ). Sacco held herself out as a certified psychiatric screener but did not hold that qualification.

Sacco spoke to Costa, who told her Carla had threatened Gail and told a neighbor that if something happened to Roland, she would kill her neighbors or herself. He also stated that Carla told police that if something happened to

A-1606-20

Roland "I'm going to shoot them myself" and told him she was depressed about her son's death thirteen years prior, Roland's health, and her strained relationship with her neighbors.

Sacco also telephoned Gail and Jane. Gail told Sacco that during the June 3, 2017 dispute Carla: (1) threatened to kill Gail and, if something happened to Roland, to kill the entire neighborhood; and (2) said, "I want to die; I want to be with my son; I don't care anymore." In addition, Gail said that Carla had been aggressive and harassing toward her for the past several weeks, but had not previously threatened to hurt anyone or herself.

Jane told Sacco that Carla "went off" on neighbors, saying "fuck you, fuck you assholes," and said to Robert, "why don't you go blow your head off in the woods." Jane confirmed that Carla said that "if anything happens to my husband, I am going to kill you all" and opined that Carla "is very paranoid that the neighborhood is talking about her" and "planning to kill" her. She stated that the neighborhood was afraid of Carla.

On the basis of the information gathered by Sacco, Carla was held for involuntary commitment for five and half hours until defendant Anita Rainford, a certified psychiatric screener, came on duty. Rainford is employed by Meridian Health and RWJ. Rainford did not conduct the psychiatric screening

5

required by statutes and regulations and did not speak with Carla. She instead transcribed Sacco's notes onto a document recommending involuntary commitment that she then gave to a psychiatrist affiliated with Meridian Health.

Carla later spoke to the psychiatrist during a telepsychiatry evaluation, telling him there was nothing wrong with her and that she had been transported to the hospital as the result of a neighborhood dispute. The psychiatrist reviewed the document prepared by Rainford, and told Carla that he did not believe her version of events but "believed them," referring to Gail, Jane, and Costa.

Carla was involuntarily committed and transported to a behavioral health center. She remained at the facility from June 4, 2017 to June 9, 2017.

On or about June 4, 2018, Carla and Roland filed a complaint in the Law Division against Gail, Robert, Jane, LEHPD, and Costa. Carla alleged: (1) defamation and abuse of process against Gail, Robert, and Jane for the false and defamatory statements they made to Costa and Meridian Health personnel that harmed Carla and caused her involuntary commitment; (2) civil conspiracy and intentional infliction of emotional distress against Gail, Robert, Jane, and Costa for false statements they made to Meridian Health personnel that harmed Carla and caused her involuntary commitment; and (3) defamation and false imprisonment against LEHPD and Costa for defamatory statements Costa made

to Meridian Health personnel that harmed Carla and caused her involuntary commitment. Roland alleged loss of consortium against all defendants. In the complaint, Carla's counsel certified pursuant to R. 4:5-1(b)(2) that Carla was not aware of any other party that should be joined to the action.

On December 21, 2018, the trial court dismissed the complaint against LEHPD and Costa with prejudice because Carla and Roland had not filed a timely notice of claim pursuant to the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to 8-11. The claims against the other defendants remain pending.[4]

On May 13, 2019, Carla initiated the present action through the filing of a complaint in the Law Division against Meridian Health, RWJ, Sacco, and Rainford. In an amended complaint, Carla alleged: (1) negligence against Sacco because she was not certified to screen Carla for involuntary commitment and conducted the screening negligently, including by failing to accurately document Costa's statements, and in a manner not in compliance with statutes and regulations; (2) negligence against Rainford for recommending Carla's

---

[4] Carla and Roland subsequently filed a complaint against LEHPD, Costa, and another LEHPD officer in the United States District Court, alleging claims under 42 U.S.C.A. § 1983 relating to Carla's involuntary commitment. In the federal complaint, Carla's counsel certified that the subject matter of the complaint was not the subject of any other action pending in any court.

A-1606-20

involuntary commitment without screening her in compliance with statutes and regulations and instead relying only on Sacco's notes; and (3) vicarious liability against Meridian Health and RWJ.[5]  In the amended complaint, Carla's counsel certified pursuant to R. 4:5-1(b)(2) that Carla was aware of no other party who should be joined to the action and did not disclose the pending 2018 action.

RWJ and Rainford moved to dismiss the 2019 complaint pursuant to R. 4:5-1(b)(2) and the entire controversy doctrine.  They argued that Carla should have asserted her claims against them in the 2018 action because those claims are based on the same transactional facts that underlie the claims she alleged in the 2018 complaint against the other defendants.  In addition, they asserted that had Carla named them in the R. 4:5-1(b)(2) certification, they could have moved to intervene in the 2018 action.  They assert that because Costa was dismissed from the 2018 action before they had a chance to allege cross-claims against, or obtain discovery from, him their ability to defend against Carla's claims in the 2019 action was substantially prejudiced.  Meridian Health and Sacco joined the motion.

---

[5]  Roland alleged loss of consortium against all defendants in the second complaint.  He later agreed to the voluntary dismissal of his claims.

A-1606-20

Carla opposed the motion, arguing that: (1) the two actions do not arise from the same transactional facts; (2) she was not aware of her claims against defendants until after the 2018 complaint had been filed; and (3) defendants were not substantially prejudiced by her failure to name them in the 2018 certification.

The trial court granted the motion. In a written opinion, the court found: (1) the 2019 action is a successive action to the 2018 action because Carla's claims in both arise from the same transactional facts and "[w]ithout Costa's involvement . . . there would be no claims against these . . . defendants. [Carla] only arrived [at Meridian Health] because of Costa's conduct[;]" (2) Carla's failure to identify defendants as parties who should be joined in the 2018 action was inexcusable; and (3) Carla's omission substantially harmed defendants because her claims against Costa had been dismissed with prejudice in the 2018 action. A January 22, 2021 order dismissed the complaint with prejudice.[6]

This appeal follows. Carla argues the trial court erred with respect to each of its findings and that dismissal of her complaint was not warranted.

II.

---

[6] The body of the order is dated January 22, 2020. The parties agree, however, that the trial court filed the order on January 22, 2021.

The entire controversy doctrine "seeks to impel litigants to consolidate their claims arising from a single controversy whenever possible." Dimitrakopoulos v. Borrus, Goldin, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 98 (2019) (quoting Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983)). The doctrine is designed to promote fairness to the parties, judicial efficiency, and complete and final dispositions by avoiding piecemeal litigation. DiTrolio v. Antiles, 142 N.J. 253, 267 (1995). The underpinning of the doctrine "are the twin goals of ensuring fairness to parties and achieving economy of judicial resources." Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 207 N.J. 428, 443 (2011).

Because the doctrine is equitably rooted, its applicability is left to judicial discretion based on the particular circumstances in a given case. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323 (1995). We review a trial court's dismissal of a complaint based on the entire controversy doctrine under an abuse of discretion standard. See Paradise Entrps., Ltd. v. Sapir, 356 N.J. Super. 96, 102 (App. Div. 2002) (analogously applying an abuse of discretion standard to the trial court's application of the equitable principles of forum non conveniens).

R. 4:5-1(b)(2) "implement[s] the philosophy of the entire controversy doctrine." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:5-1(b)(2)(2023). The rule provides, in relevant part:

> Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court . . . or whether any other action . . . is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any non-party who should be joined in the action pursuant to R. 4:28 or who is subject to joinder pursuant to R. 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may require notice of the action to be given to any non-party whose name is disclosed in accordance with this rule or may compel joinder pursuant to R. 4:29-1(b).
>
> [R. 4:5-1(b)(2).]

The Rule authorizes sanctions for a failure to comply with its certification requirement:

> If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however,

11

be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

[Ibid.]

"The intent of this rule is to provide notice to all parties in each action that there are other actions pending involving the same controversy." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:5-1(b)(2)(2023).

Whether a violation of R. 4:5-1(b)(2) warrants barring a successive claim requires a four-step, fact-sensitive inquiry. 700 Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 236 (App. Div. 2011). The court "must first determine from the competent evidence before it whether a [R.] 4:5-1(b)(2) disclosure should have been made in a prior action because a non-party was subject to joinder pursuant to [R.] 4:28 or [R.] 4:29-1(b)." Ibid. If so, R. 4:5-1(b)(2) allows a court to consider dismissal if the actions are successive, the party's failure to disclose was inexcusable, and the undisclosed party has been substantially prejudiced as a result of the non-disclosure. Ibid. "Dismissal is a sanction of last resort." Id. at 237. The party asserting the entire controversy doctrine as a defense bears "the burden of establishing both inexcusable conduct and

substantial prejudice." Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 242 (App. Div. 2002). We address these factors in turn.

(1)    Whether defendants were subject to joinder in the 2018 action pursuant to R. 4:28 or R. 4:29-1(b).

The trial court did not engage in an explicit analysis of this factor. Our review of the record, however, reveals sufficient support for the conclusion that defendants were subject to joinder in the 2018 action.

According to R. 4:28-1(a), a person shall be

> joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.

R. 4:29-1(a) provides that all persons may

> be joined as defendants jointly, severally, in the alternative, or otherwise, if the right to relief asserted by the plaintiffs or against the defendants arises out of or in respect of the same transaction, occurrence, or series of transactions or occurrences and involves any question of law or fact common to all of them.

For purposes of the entire controversy doctrine, it is "the factual circumstances giving rise to the controversy itself, rather than the commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." Mystic Isle, 142 N.J. at 323.

It is evident that defendants were subject to joinder in the 2018 action under either R. 4:28-1(a) or R. 4:29-1(a) because Carla's claims against them arise from the same factual circumstances as the claims she asserted in the 2018 complaint. The factual predicate of Carla's claims against Gail, Robert, Jane, LEHPD, and Costa are the statements those parties made to Costa and hospital personnel resulting in her involuntary commitment. Carla's claims against defendants, sounding in negligence and vicarious liability, are also based, in part, on statements made to Sacco by Gail, Jane, and Costa during the evaluation process resulting in Carla's involuntary commitment.

(2)    Whether the 2019 action is a successive action to the 2018 action.

A successive action is filed "following the suit in which the [R.] 4:5-1(b)(2) violation occurred[,]" Alpha Beauty Distribs., Inc. v. Winn-Dixie Stores, Inc., 425 N.J. Super. 94, 101 (App. Div. 2012), and raises "distinct claims [that] are aspects of a single larger controversy because they arise from interrelated facts." Dimitrakopoulos, 237 N.J. at 109 (quoting DiTrolio, 142 N.J. at 271).

14

We agree with the trial court's conclusion that the 2019 action is a successive action to the 2018 action. The 2019 action was instituted following the filing of the 2018 action. In addition, as we discussed at length above, the claims Carla raises against the defendants in the 2018 action and the defendants in the 2019 action are components of a single larger controversy centered on Carla's involuntary commitment.

(3)     Whether Carla's failure to name defendants as parties who should be joined in the 2018 action was excusable.

We agree with the trial court's conclusion that Carla's failure to name defendants in the 2018 certification was inexcusable. Carla claims she was unaware of defendants' negligence until almost a year after she filed the 2018 action. However, she offered no explanation for not amending the certification when she became aware of her negligence claims against defendants. R. 4:5-1(b)(2) imposes a continuing obligation on Carla to amend the certification.

(4)     Whether defendants were substantially prejudiced by Carla's failure to name them in the 2018 certification.

"Substantial prejudice in this context means substantial prejudice in maintaining one's defense." Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J. Super. 445, 454 (App. Div. 2000). Typically, this requirement is met where

15

there has been a loss of witnesses, evidence, and the passage of time such that memories have faded. Ibid. An undisclosed party must proffer "specific difficulties in mounting a defense" to claims that are "significantly different from that normally encountered." Id. at 456. Ultimately, "[t]he phrase 'substantial prejudice' is used in [R.] 4:5-1(b)(2) as a limitation on the court's exercise of the power of dismissal as a sanction" and is therefore, "consistent with our general preference for addressing disputes on the merits and reserving dismissal for matters in which those lesser sanctions are inadequate." Kent Motor Cars, Inc., 207 N.J. at 447.

Our review of the record reveals insufficient support for the trial court's conclusion that defendants suffered substantial prejudice warranting dismissal of the complaint. Defendants do not identify any obstacle to obtaining the discovery they may need to defend against Carla's negligence. Most of those claims appear to have little to do with Costa. To the extent that Costa was involved in the involuntary commitment process, he is available to be deposed and to serve as a witness for trial. Nor do defendants argue that because of Carla's failure to name them in the 2018 certification evidence useful to their defense has been lost or the memory of witnesses faded.

16

Instead, defendants' primary argument is that Costa, having been dismissed from the 2018 action, will not be available to defendants for purposes of apportionment of damages in the event they and he are found to have negligently harmed Carla. Costa, however, was dismissed from the 2018 action because Carla had not filed a timely notice of tort claim. That outcome would have been the same had defendants been parties to that action. In addition, Carla's failure to file a timely notice of tort claim precludes defendants' contribution claim against Costa in any event. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 148-49 (2017). The trial court, however, could in the 2019 action mold any judgment entered in Carla's favor pursuant to N.J.S.A. 2A:15-5.2(d) if defendants are found liable and they prove Costa's negligence was a contributing cause of Carla's damages. Id. at 149. Defendants, therefore, face no greater liability as a result of Carla's failure to name them in the 2018 certification.

In addition, any threat of inconsistent findings with respect to the truth and accuracy of the statements that resulted in Carla's involuntary commitment could be ameliorated through consolidation of Carla's pending claims in the 2018 and 2019 actions. We note, as well, the trial court's failure to consider sanctions less drastic than dismissal of the complaint

For these reasons, we conclude that the trial court mistakenly exercised its discretion when it dismissed the complaint.

The January 22, 2021 order is reversed, the complaint is reinstated, and the matter is remanded for further proceedings consistent with this opinion. On remand, the trial court shall consider consolidation of the 2018 and 2019 actions and whether sanctions against Carla less severe than dismissal of the complaint are warranted. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1606-20