109 F.3d 883
 37 Fed.R.Serv.3d 549
 RYCOLINE PRODUCTS, INC., A Corporation, Sun Graphic Inc., A
Corporation Appellants,
v.
C & W UNLIMITED, A Corporation; Michael Walsh; Stephen
Pauloski; Carl Kaiser; Bernard Bush; Eric Berliner;
Joseph Cavallo, individually and as employees, shareholders,
officers and/or directors, of C & W; and Co-Conspirators
John Does, # 1 through # 100.
 No. 96-5788.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 14, 1997.
Decided March 25, 1997.
 
 Robert J. Basil (argued), Collier, Jacob & Mills, Somerset, NJ, for Appellants Rycoline Product, Inc., Sun Graphic, Inc.
 Sabrina A. Kogel (argued), Greenbaum, Rowe, Smith, Ravin, Davis & Himmel, Woodbridge, NJ, for Appellees C & W Unlimited, A Corporation, Michael Walsh, Stephen Pauloski, Carl Kaiser, Bernard Bush, Eric Berliner.
 Before: COWEN, McKEE and JONES,* Circuit Judges.OPINION
 COWEN, Circuit Judge.
 
 
 1
 This is an appeal from the November 20, 1996, order of the district court, granting defendants' motion to dismiss the complaint on the grounds that the action is barred by application of New Jersey's Entire Controversy Doctrine. We must decide whether the Entire Controversy Doctrine precludes the initiation of a second action before the first action has been concluded. We also determine the proper procedural mechanism for bringing a motion contending that an action is barred by the Doctrine. We will reverse the order of the district court and remand for further proceedings because we conclude that the Doctrine does not preclude the initiation of a second action while a prior action is still pending.
 
 I.
 
 2
 Plaintiffs Rycoline Products, Inc. and Sun Graphic, Inc. (collectively "Rycoline") are manufacturers and marketers of specialty chemical products used in the newspaper and commercial printing industry. In 1979, defendants Michael Walsh and Joseph Cavallo left Rycoline to form defendant C & W Unlimited, a competitor of Rycoline's that also manufactures certain chemicals used in the printing industry. Cavallo subsequently sold his interest in C & W, and that company is currently co-owned by Walsh and defendant Eric Berliner.
 
 
 3
 In the Spring of 1995, C & W hired defendants Stephen Pauloski, Carl Kaiser, and Bernard Bush, all former employees of Rycoline. Shortly thereafter, Rycoline filed an action in the New Jersey Superior Court, Law Division, against all defendants herein except Cavallo and Berliner, asserting state common-law and statutory claims, including a claim for equitable relief pursuant to the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 et seq. (1989). Rycoline alleged essentially that defendants had breached contractual and fiduciary duties they owed to Rycoline, and that they had committed various business torts, including misappropriation of trade secrets and employee piracy.
 
 
 4
 Several months later, Rycoline moved in state court to amend its complaint to add Berliner as a defendant and to add claims pursuant to the New Jersey and the federal Racketeer Influenced and Corrupt Organizations Acts ("RICO"), N.J.S.A. 2C:41-1 et seq. (1996) and 18 U.S.C. § 1961 et seq. (1984), and the Lanham Act, 15 U.S.C. § 1125 (1982), and to obtain additional relief under the CFA. Rycoline's motion was denied without prejudice as to its proposed RICO claims and was denied with prejudice as to its proposed CFA claim. However, Rycoline was permitted to amend its complaint to add the Lanham Act claim and to add Berliner as a defendant, and it did so.
 
 
 5
 In May of 1996, in the course of bringing a second application for temporary restraints,[1] Rycoline alleged for the first time that Walsh had misappropriated trade secrets from Rycoline when he left that company in 1979. In denying the application for temporary restraints, the state court noted that the complaint encompassed alleged conduct by the defendants only from 1995. The parties have undertaken extensive discovery in the state action, which is currently scheduled to begin trial on October 6, 1997.
 
 
 6
 After the second application for temporary restraints was denied in state court, Rycoline filed this action in district court, asserting essentially the same claims against defendants as are asserted in the state court action. The federal complaint additionally includes the claims pursuant to the New Jersey and federal RICO statutes and the CFA that had been the subject of Rycoline's motion to amend the complaint in state court. The federal complaint also expands the scope of the claims brought in state court by alleging conduct by Walsh, Cavallo, and C & W dating back to 1979. Additionally, as part of its RICO claims, Rycoline alleged that Walsh and C & W engaged in perjury and tampering with evidence in relation to hearings that took place in the state court action. Except for Cavallo, who is a defendant in this action but not in the state litigation, the parties are identical.
 
 
 7
 Defendants in the federal action subsequently moved to dismiss the complaint pursuant to FED.R.CIV.P. 12(b)(6) for failure to state a claim upon which relief can be granted. They contended that application of New Jersey's Entire Controversy Doctrine bars this federal action because the claims asserted either have been brought or could have been brought in the first-filed state court action. In the alternative, defendants moved to dismiss the complaint, or to stay the proceedings, on the ground that the district court should abstain pursuant to the doctrine first enunciated in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-20, 96 S.Ct. 1236, 1246-48, 47 L.Ed.2d 483 (1976). In the course of responding to the motion, Rycoline pointed out to the district court that Rycoline disagreed with several of defendants' factual assertions. It explained, however, that it would not specifically enumerate the parties' points of disagreement, given that the motion was brought pursuant to FED.R.CIV.P. 12(b)(6) and that matters outside the pleadings are beyond the scope of such a motion.
 
 
 8
 The district court granted defendants' motion, but did so pursuant to FED.R.CIV.P. 12(b)(1) on the ground that the action was barred by the Entire Controversy Doctrine and that this bar divested the court of subject matter jurisdiction. See Rycoline Prods., Inc. v. C & W Unlimited, No. 96-2567, slip op. at 8 n. 4, 11-13 (D.N.J. Nov. 20, 1996). In the course of its opinion, the court referred to several factual matters outside the pleadings, matters that Rycoline disputes, such as that Cavallo is legally incompetent, see id. at 2 n. 1, and that Rycoline knew or should have known at the outset of the state litigation that defendants' alleged misconduct dated back to at least 1979. See id. at 9-11. The court did not address defendants' alternative ground for dismissal or for a stay. This appeal by Rycoline followed.
 
 II.
 
 9
 As an initial matter, although it does not affect the ultimate disposition of this appeal, we hold that the district court erred by treating defendants' motion as a motion to dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1), and by considering matters outside the pleadings pursuant to such a motion. To demonstrate why, we will first examine the nature of the Entire Controversy Doctrine.
 
 
 10
 New Jersey Civil Practice Rule 4:30A (1997) provides, in part: "Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine...." The Rule codifies prior judicial determinations of the parameters of the Doctrine and allows for further judicial development.
 
 
 11
 The Entire Controversy Doctrine embodies the notion that " 'the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.' " DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494, 502 (1995) (quoting Cogdell v. Hospital Ctr., 116 N.J. 7, 560 A.2d 1169, 1172 (1989)). The Doctrine thus requires a party to bring in one action "all affirmative claims that [it] might have against another party, including counterclaims and cross-claims," and to join in that action "all parties with a material interest in the controversy," or be forever barred from bringing a subsequent action involving the same underlying facts. Circle Chevrolet Co. v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509, 513 (1995); see also Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523, 529 (1995).
 
 As the DiTrolio court explained:
 
 12
 The doctrine reflects a basic concept of judicial administration that is of constitutional dimension. The purposes of the doctrine are threefold: (1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.
 
 
 13
 DiTrolio, 662 A.2d at 502 (citation omitted); see also Mystic Isle, 662 A.2d at 529; Cogdell, 560 A.2d at 1169, 1173. However, it is a flexible concept whose " 'polestar ... is judicial "fairness." ' " DiTrolio, 662 A.2d at 505 (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. & Loan Ass'n, 243 N.J.Super. 624, 581 A.2d 109, 113 (App.Div.1990)). "Application of the rule ... is discretionary and clarification of the limits of the doctrine is best left to case-by-case determination." Circle Chevrolet, 662 A.2d at 513; see also Mystic Isle, 662 A.2d at 529-30; Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 476 A.2d 250, 253 (1984).
 
 
 14
 Although sometimes approached as if they belong to two different families, see, e.g., Lickfield v. Lickfield, 260 N.J.Super. 21, 614 A.2d 1365, 1365 (Ch. Div.1992), New Jersey's Entire Controversy Doctrine and traditional res judicata principles are blood relatives. The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles. See Electro-Miniatures Corp. v. Wendon Co., 889 F.2d 41, 44 n. 5 (3d Cir.1989) ("New Jersey's entire controversy doctrine is inextricably related to the general principle of res judicata ...."); id. at 46 ("New Jersey's res judicata principles[ ] includ[e] the entire controversy doctrine ...."); see also Jones v. Holvey, 29 F.3d 828, 829-31 (3d Cir.1994) (recognizing that Entire Controversy Doctrine and res judicata are closely related); Prevratil v. Mohr, 145 N.J. 180, 678 A.2d 243, 246 (1996) (Entire Controversy Doctrine "stems directly from the principles underlying the doctrine of res judicata "); Cafferata v. Peyser, 251 N.J.Super. 256, 597 A.2d 1101, 1104 (App.Div.1991) ("If res judicata and collateral estoppel principles, which are predicated upon actual issue litigation, are inapplicable in [these] circumstances, then, a fortiori, the entire controversy doctrine, predicated on litigation which could have, but did not take place, is inapplicable.").
 
 
 15
 Res judicata is specifically listed as an affirmative defense pursuant to FED.R.CIV.P. 8(c). It follows that, in the context of a proceeding in federal court, the assertion that an action is barred by the Entire Controversy Doctrine is also an affirmative defense pursuant to that Rule, included along with res judicata. At the least, the Doctrine constitutes "any other matter constituting an avoidance or affirmative defense" under Rule 8(c). As we wrote in Livera v. First Nat'l State Bank of New Jersey, 879 F.2d 1186, 1190 (3d Cir.1989), "res judicata is an affirmative defense and not a doctrine which would defeat the subject matter jurisdiction of this court." Similarly, application of the Entire Controversy Doctrine, also an affirmative defense, does not "defeat the subject matter jurisdiction of" a federal court. Id. Thus, the district court here was incorrect in stating that a motion to dismiss on Entire Controversy grounds is a motion to dismiss for lack of subject matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1).
 
 
 16
 Such an affirmative defense could properly be the grounds for a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to FED.R.CIV.P. 12(b)(6). Indeed, defendants' motion papers below reflect that the motion to dismiss was made pursuant to Rule 12(b)(6). See App. at 77. However, a motion to dismiss pursuant to Rule 12(b)(6) was not the proper vehicle in this case. We held in Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir.1978), that if a statute of limitations "bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine.
 
 
 17
 The claimed Entire Controversy bar in this matter was not "apparent on the face of the complaint." Bethel, 570 F.2d at 1174. Thus, the issue could not be resolved via a Rule 12(b)(6) motion. The district court could have properly pursued either of two procedures. It could have denied the motion without prejudice to renew in the form of a motion for summary judgment pursuant to FED.R.CIV.P. 56. Alternatively, the district court could have converted the Rule 12(b)(6) motion into a Rule 56 motion pursuant to FED.R.CIV.P. 12(b), thereby affording "all parties ... reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Instead, the district court essentially converted this Rule 12(b)(6) motion into a Rule 56 motion without giving Rycoline that opportunity. In so doing, it erred.
 
 III.
 
 18
 We now reach the more fundamental issue of whether the district court was correct in determining that the Entire Controversy Doctrine barred this action, regardless of the procedural path it took in arriving at that destination. We conclude that the district court erred in this respect as well.
 
 
 19
 A federal court hearing a federal cause of action is bound by New Jersey's Entire Controversy Doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738 (1994). See Peduto v. City of North Wildwood, 878 F.2d 725, 728 (3d Cir.1989). That Act provides in part that the "judicial proceedings of any court of any ... State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. In other words, " 'a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give.' " Peduto, 878 F.2d at 728 (quoting Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986)). This requirement may be avoided only if "application of the state preclusion law would violate due process." Id.; see Kremer v. Chemical Constr. Corp., 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).
 
 
 20
 Even assuming the Full Faith and Credit Act applies absent a final judgment or order of a state court, a proposition about which we express serious doubts, the district court misapplied the Entire Controversy Doctrine. We look to the development of that Doctrine by the New Jersey courts to determine whether a New Jersey court would give preclusive effect to a litigation that has not yet been concluded. That question has been squarely addressed and answered in the negative in Kaselaan & D'Angelo Assocs., Inc. v. Soffian, 290 N.J.Super. 293, 675 A.2d 705, 707, 708 (App.Div.1996). There, the court held that "the entire controversy doctrine only precludes successive suits involving related claims. It does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." Id. 675 A.2d at 708 (citation omitted).
 
 
 21
 Defendants attempt to characterize Kaselaan as standing for something other than the proposition stated above. In that case, plaintiffs brought a diversity action in federal district court against various defendants. Subsequently, plaintiffs filed an action in state court against different, non-diverse defendants. The defendants in the state action moved to dismiss the complaint on the ground that the Entire Controversy Doctrine barred the second action. The trial court denied the motion, reasoning that if the plaintiffs were forced to join the non-diverse defendants in the federal action, it would be dismissed and the plaintiffs would be barred by the statute of limitations from bringing a subsequent action in state court against all defendants. See id. at 707.
 
 
 22
 Defendants urge that Kaselaan stands only for the proposition that where a plaintiff cannot, for jurisdictional reasons, join certain defendants in a pending action, the institution of a new action is not barred by the Entire Controversy Doctrine. See Appellee's Br. at 30-31. This reading of the case is too narrow. The Appellate Division in that case clearly and firmly rejected the trial court's rationale for its decision. See Kaselaan, 675 A.2d at 707-08 ("We affirm the denial of defendants' motion to dismiss, although for different reasons than those expressed by the trial court.... [T]he trial court's denial of defendants' motion to dismiss is not sustainable on the grounds set forth in its statement of reasons.") (emphasis added). The court specifically disagreed that the plaintiff would be barred by the statute of limitations from bringing a subsequent state action against all defendants. See id. at 707. It proceeded to affirm the trial court on the grounds noted above. See id. Indeed, the very first sentence of the opinion states that the issue is "whether the entire controversy doctrine requires the dismissal of a state court action arising out of the same sequence of events as a previously filed federal district court action, even though the federal action has not yet been concluded." Id. (emphasis added). Kaselaan is thus directly on point.
 
 
 23
 Although aware of the existence of Kaselaan, the district court apparently did not appreciate the import of that decision. Indeed, the district court mentioned the case only once, in a footnote, without citation, and accompanied by a discussion that was not fully developed. See Rycoline, slip op. at 11 n. 5. Instead, the district court relied heavily on Kelly v. Borough of Sayreville, 927 F.Supp. 797 (D.N.J.1996), aff'd, 107 F.3d 1073 (3d Cir.1997), and Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 142 N.J. 336, 662 A.2d 536 (1995).
 
 
 24
 While Kelly arguably supports the district court's determination, that decision has since been affirmed by this Court on an alternative ground, and we expressed "significant reservations concerning the district court's disposition of [the Entire Controversy Doctrine] issue." Kelly, 107 F.3d at 1075. Moreover, one member of the panel that decided Kelly would have held that the district court there erred in its interpretation and application of the Entire Controversy Doctrine. See id. at 1078-79 (McKee, J., concurring). Under these circumstances, the portion of the Kelly opinion in the district court concerning the Entire Controversy Doctrine has little, if any, persuasive value.
 
 
 25
 Mortgagelinq presents a more substantial problem. In fact, defendants would have us ignore the clear holding of Kaselaan because, according to them, it was wrongly decided under Mortgagelinq. In Mortgagelinq, the plaintiffs had sued certain defendants in federal district court. Subsequently, after the time period had expired for joining additional defendants in the federal action, plaintiffs brought a separate suit, stemming from the same operative facts, in state court against different defendants. The state court dismissed that action, holding that it was barred by the Entire Controversy Doctrine. See Mortgagelinq, 662 A.2d at 538-39. The federal action later was concluded. See id. at 539 n. 2. The trial court's dismissal was then affirmed by the Appellate Division of the Superior Court and by the New Jersey Supreme Court. See Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co., 275 N.J.Super. 79, 645 A.2d 787 (App.Div.1994), aff'd in part, rev'd in part, 142 N.J. 336, 662 A.2d 536 (1995).
 
 
 26
 Thus, the New Jersey Supreme Court affirmed the use of the Entire Controversy Doctrine to bar a related proceeding where the first proceeding was still pending at the time the second was initiated. Defendants urge that this indicates that the conclusion of the first proceeding is not a prerequisite to the application of the Entire Controversy Doctrine to bar the second proceeding. We disagree. While the actions of the New Jersey Supreme Court seem puzzling at first, we believe they are explainable in at least three ways that are consistent with Kaselaan.
 
 
 27
 First, the time period for joinder of additional defendants had expired in the federal proceeding before the state action was instituted against those defendants. The New Jersey Supreme Court could have reasoned that this irrevocable obstacle to the addition of parties in the federal action was the functional equivalent of a final order or judgment, permitting those parties to rely upon the Entire Controversy Doctrine as a defense.
 
 
 28
 Second, it may be that the Entire Controversy Doctrine applied once the federal action was concluded, which occurred while the dismissal of the state action was on appeal, notwithstanding that both actions were pending simultaneously when the state trial court dismissed the state action. This hypothesis is supported by language in the opinions of both the New Jersey Supreme Court and the Appellate Division that assumes that the case involves successive, not simultaneous, litigations. See, e.g., Mortgagelinq, 645 A.2d at 788 ("Plaintiffs have already secured a judgment against" the federal defendants); see also Mortgagelinq, 662 A.2d at 540, 542 (speaking of "successive" actions); Mortgagelinq, 645 A.2d at 788 (discussing "prior" litigation).
 
 
 29
 However, the best explanation for the outcome in Mortgagelinq is that the three courts that issued opinions in that case simply never addressed the question of whether finality is a prerequisite to the application of the Entire Controversy Doctrine, most likely because the parties did not raise the issue. Similarly, Gross v. Cohen DuFour & Assocs., 273 N.J.Super. 617, 642 A.2d 1074 (Law Div.1993), a Law Division opinion upon which defendants also rely, does not expressly take up the issue.
 
 
 30
 Counsel for defendants contended at oral argument that the New Jersey Supreme Court in Mortgagelinq addressed precisely this issue, referring to the following passage from that opinion:
 
 
 31
 Had [the federal and the state actions] been brought successively in New Jersey courts, there would be little doubt that application of the entire controversy doctrine would preclude the omitted claims. The issue is whether the non-joinder of parties in a related action in the Pennsylvania federal court results in the same party preclusion in New Jersey.
 
 
 32
 662 A.2d at 540 (emphasis added). By focusing on the words "successively" and "related," defendants distort what exactly was decided in Mortgagelinq. The key words from the above-quoted passage are not those that we have emphasized but rather the phrases "in New Jersey courts," "in the Pennsylvania federal court," and "in New Jersey." That is, the focus of the New Jersey Supreme Court in Mortgagelinq was spatial, not temporal. This is abundantly clear from the first paragraph of the opinion:
 
 
 33
 The issue in this case, most broadly stated, is whether the [entire controversy] doctrine has an extraterritorial effect. The specific question is whether New Jersey courts are obliged to entertain claims against parties that could have been joined with substantially similar claims pursued by the same plaintiffs against other parties elsewhere.
 
 
 34
 Id. at 537 (emphasis added).
 
 
 35
 Kaselaan expressly addressed the question we decide today, while Mortgagelinq did not. Kaselaan was decided nine months after Mortgagelinq, and, indeed, cited that opinion as supporting its holding. We find Kaselaan entirely consistent with Mortgagelinq. Accordingly, we decline defendants' invitation that we not follow Kaselaan on the grounds that it is inconsistent with the dictates of the New Jersey Supreme Court. See General Elec. Credit Corp. of Tenn. v. Ger-Beck Mach. Co., 806 F.2d 1207, 1209 (3d Cir.1986) ("Decisions of intermediate appellate [state] courts are evidence of state law and must be given significant weight in the absence of any indication that the highest state court would rule otherwise.") (citation omitted).
 
 
 36
 Moreover, Kaselaan makes eminent sense. We have noted above the close relation between the Entire Controversy Doctrine and traditional res judicata principles. One of the prerequisites to the application of res judicata in New Jersey, as elsewhere, is the existence of a prior judgment that is final, valid, and on the merits. See Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 591 A.2d 592, 599 (1991); Olds v. Donnelly, 291 N.J.Super. 222, 677 A.2d 238, 243 (App.Div.), certif. granted, 146 N.J. 565, 683 A.2d 1161 (1996); see also Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981); RESTATEMENT (SECOND) OF JUDGMENTS § 19 (1982). Although the Entire Controversy Doctrine is not identical to traditional res judicata principles, defendants have pointed to no authority for the proposition that some measure of finality is any less necessary for application of the Doctrine than it is for application of res judicata. Consistent with this reasoning and with Kaselaan, we hold that the Entire Controversy Doctrine does not preclude the initiation of a second litigation before the first action has been concluded.[2]
 
 
 37
 In so holding, we necessarily express our disapproval of Pittston Co. v. Sedgwick James of New York, No. Civ. A. 96-1578, 1996 WL 617139, at * 7-9 (D.N.J. Oct. 18, 1996), the only other opinion we have uncovered that addresses the issue we decide today. There, the court held that "the absence of final judgment in the [first] action does not preclude application of the entire controversy doctrine" to bar the second action. Id. at * 9, at ----. Although Pittston was decided five months after Kaselaan, it fails to cite that opinion. Moreover, the district court in Pittston relied upon the same inferences from Mortgagelinq that we have found to be unsound. See id. at * 8, at ----. Thus, Pittston suffers from the same infirmities as the opinion of the district court in the instant case and should not be followed.
 
 IV.
 
 38
 Defendants also moved below for dismissal of the complaint or for a stay on the alternative ground that the court should abstain pursuant to the principles first enunciated in Colorado River, 424 U.S at 817-20, 96 S.Ct. at 1246-48. In order for Colorado River abstention to be appropriate, there must be parallel state and federal litigations that are "truly duplicative." Trent v. Dial Medical of Florida, Inc., 33 F.3d 217, 223 (3d Cir.1994). When the two cases fit this requirement, the district court, in its discretion, may abstain only if the several Colorado River factors clearly weigh in favor of abstention, see Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983), because "the federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them.' " Trent, 33 F.3d at 223 (quoting Colorado River, 424 U.S. at 817, 96 S.Ct. at 1246) (alteration in original). The factors the court must consider are: which court first assumed jurisdiction over a relevant res, if any; whether the federal court is inconvenient; whether abstention would aid in avoiding piecemeal litigation; which court first obtained jurisdiction; whether federal or state law applies; and whether the state action is sufficient to protect the federal plaintiff's rights. See id. at 225.
 
 
 39
 Although the district court did not reach the Colorado River abstention issue, we are confident after an independent review of the issue that proper grounds for abstention do not exist here. Even assuming the two actions are sufficiently parallel for purposes of invoking the Colorado River doctrine, it would be an abuse of discretion for the court to abstain from hearing this matter.
 
 V.
 
 40
 In an age when the number of cases brought in federal court is ever-increasing and judicial resources concomitantly grow more and more overburdened, the Entire Controversy Doctrine may at first appear to be a useful implement to prune the federal docket. However, the Doctrine has its limits. Given that the Doctrine is a more specific application of traditional res judicata principles, it follows that some measure of finality of a prior proceeding is a prerequisite to asserting the Doctrine as a defense in a subsequent litigation. An intermediate appellate state court has so held, constituting strong evidence of New Jersey law. The district court was not free simply to disregard that evidence.
 
 
 41
 We agree with the court in Kaselaan that the Entire Controversy Doctrine does not preclude the initiation of a second action before the first action has been concluded. Accordingly, the November 20, 1996, order of the district court is reversed and the matter remanded for further proceedings.
 
 
 42
 Costs taxed against appellees.
 
 
 
 *
 Honorable Nathaniel R. Jones, United States Circuit Judge, United States Court of Appeals for the Sixth Circuit, by designation
 
 
 [1]
 A prior application for temporary restraints had been denied
 
 
 [2]
 We do not reach the additional question of whether, where two actions are pending simultaneously, the Entire Controversy Doctrine may be raised at the time one action is concluded to preclude completely the other action