NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2176
_____


CHARLENE L. JACKSON,
a Citizen of New Jersey

v.

MIDLAND FUNDING LLC,
a Delaware Limited Liability Company;
JOHN DOES I-X, in their individual capacities, and as
agents for Midland Funding LLC

Midland Funding, LLC,
                                          Appellant

_____


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cv-06491)
Senior District Judge:  Honorable Joseph E. Irenas

_____


Submitted Under Third Circuit LAR 34.1(a)
December 13, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,[*] *District Judge*

(Filed: February 16, 2012)
_____


OPINION
_____


_____

   [*] Hon. Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

STENGEL, *District Judge*.

Midland Funding, LLC, appeals from an Order of the United States District Court for the District of New Jersey which denied Midland's motion for summary judgment, and granted Charlene Jackson's motion for partial summary judgment. For the reasons below, we will affirm.

In 2001, while living in Pennsylvania, Mrs. Jackson opened a Gateway credit account to finance the purchase of a Gateway computer for her college-bound daughter. Two years later, while still in Pennsylvania, Mrs. Jackson defaulted on the loan. Gateway sold the defaulted account to Atlantic Credit & Finance, a debt buyer, who in turn sold it to Midland in March 2008. Midland began collection efforts culminating in its filing suit in New Jersey[1] state court against Mrs. Jackson on January 5, 2009, a few months short of the six-year anniversary of the default. The complaint sought judgment in the amount of $753.21 plus interest. In response to the complaint, Mrs. Jackson filed a *pro se* Answer, insisting that Pennsylvania's four-year statute of limitations rendered the contract action untimely. The Answer did not raise a counterclaim against Midland.

Mrs. Jackson eventually sought the assistance of counsel to represent her. On August 17, 2009, the scheduled day of the trial in state court, Mrs. Jackson and her attorney learned from the presiding judge that Midland had withdrawn the collection action against her, and that the judge had dismissed the action with prejudice.

---

[1] By the time the lawsuit was filed, Mrs. Jackson was living in Sicklerville, New Jersey, and was properly served with process there.

Mrs. Jackson brought this federal action in the District of New Jersey against Midland under the Fair Debt Collection Practices Act ("FDCPA"). The single-count complaint alleged that Midland violated the FDCPA when it knowingly filed a time-barred lawsuit to collect the debt. Midland moved for summary judgment claiming that New Jersey's "entire controversy doctrine" barred Mrs. Jackson's action, and that the underlying state-court action was not time-barred because New Jersey's six-year statute of limitations had not yet run. Mrs. Jackson filed a cross-motion for summary judgment as to liability only.

In entering judgment in favor of Mrs. Jackson and against Midland, the District Court found that New Jersey's entire controversy doctrine[2] did not bar Mrs. Jackson's FDCPA claim, and that Pennsylvania's four-year statute of limitations[3] applied to the underlying state-court suit, rather than New Jersey's six-year statute of limitations.[4] Midland appealed.

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a District Court's Order granting summary judgment *de novo*. EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010).

---

[2] "A federal court hearing a federal cause of action is bound by New Jersey's entire controversy doctrine, an aspect of the substantive law of New Jersey, by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738." Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 887 (3d Cir. 1997).

[3] See 42 Pa. Cons. Stat. Ann. § 5525.

[4] See N.J. Stat. Ann. § 2A: 14-1.

On appeal, Midland first challenges the District Court's determination that New Jersey's entire controversy doctrine did not bar Mrs. Jackson's claim. Midland insists that Mrs. Jackson should have brought her FDCPA claim as a counterclaim in Midland's state-court action, and because she did not, her action should have been barred. We disagree.

The entire controversy doctrine embodies the notion that "the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995) (quoting Cogdell v. Hospital Ctr., 560 A.2d 1169, 1172 (N.J. 1989)). The doctrine is New Jersey's "specific, and idiosyncratic, application of traditional *res judicata* principles." Rycoline Prods. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). "In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that trigger the requirement of joinder to create a cohesive and complete litigation." Prevratil v. George Mohr, et al., 678 A.2d 243, 248 (N.J. 1996). Accordingly, all aspects of a controversy, arising from the same facts or series of facts, must be asserted in a single action.

We agree with the District Court that different operative facts underlie the federal court action and the state court action. The latter sought to collect a debt, and would have explored whether Mrs. Jackson had incurred that debt, whether she had defaulted on it, and what remedy would have been appropriate. In short, it was a typical collection action.

4

The former employs a vehicle given to consumers by Congress which allows them to bring a private cause of action against debt collectors who fail to comply with the FDCPA. See 15 U.S.C. § 1692k. Congress enacted the FDCPA in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Thus, the FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including falsely representing "the character, amount, or legal status of any debt," id. § 1692e(2)(A). The FDCPA also prohibits debt collectors from using unfair or unconscionable means of collecting a debt. Id. § 1692f.

Mrs. Jackson exercised her rights as a consumer under the FDCPA and brought the federal action claiming that Midland was well aware of the staleness of her debt, that Midland improperly filed the collection action against her anyway, and that Midland withdrew the action on the day of trial after Mrs. Jackson had incurred the expense and aggravation of defending the collection suit. The prosecution and ultimate withdrawal of the state court proceeding form the basis of the alleged violation of the FDCPA. It is illogical to expect Mrs. Jackson to have filed a counterclaim in the state action before the eleventh-hour withdrawal occurred which, to Mrs. Jackson, completed the pattern of "unfair or unconscionable means" used by Midland to attempt to collect the debt.

Certainly the two actions are related. While there is a commonality of parties, the two actions do not arise out of a common nucleus of operative facts sufficient to trigger the necessity of creating a complete litigation as contemplated by the entire controversy doctrine. It is the potentially abusive and harassing nature of the efforts Midland was

5

alleged to have employed in collecting the debt which factually sets apart the two actions. Accordingly, we affirm the District Court's determination that New Jersey's entire controversy doctrine did not bar Mrs. Jackson's FDCPA claim under these circumstances.

Midland next challenges the District Court's granting of partial summary judgment on behalf of Mrs. Jackson. Midland insists that, in determining the state court action to be time-barred, the District Court improperly chose to apply Pennsylvania's statute of limitations rather than New Jersey's statute of limitations. We disagree.

"In making a choice-of-law determination in a breach-of-contract case, New Jersey courts ask which forum has the most significant relationship with the parties and the contract." Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 401 (3d Cir. 2010) (citing State Farm Mut. Auto Ins. Co. v. Estate of Simmons, 417 A.2d 488, 491-492 (N.J. 1980)). To that end, the New Jersey Supreme Court has adopted the principles set forth in the Restatement (Second) of Conflicts of Laws, Sections 188 and 6. Id. (citing Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885, 888 (N.J. 1993)). Section 188(1) provides that "the rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in Section 6." Subsection (2) provides that "the contacts to be taken into account in applying the principles of Section 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the

6

domicil, residence, nationality, place of incorporation and place of business of the parties." See Restatement (Second) of Conflicts of Laws § 188.

In applying this test to Midland's suit to collect the debt, the District Court properly found that Pennsylvania had the more significant relationship to the claim, and that New Jersey's relationship was merely attenuated. Mrs. Jackson purchased the Gateway computer and opened the Gateway account while living in Pennsylvania. The computer was shipped to Pennsylvania. When she defaulted on the account, she was still living in Pennsylvania. In fact, when Atlantic Credit & Finance sold the debt to Midland in early 2008, Mrs. Jackson was living in Pennsylvania. By then, Pennsylvania's four-year statute of limitations had already run. Sometime in late 2008, Mrs. Jackson moved to New Jersey, a move which would have had no impact on the lapsed statute of limitations. Although the relevant events of the transaction continued to occur in Pennsylvania, Midland filed the collection action against Mrs. Jackson in New Jersey, presumably because personal jurisdiction could be most easily obtained there.

Further, in arguing that the District Court erred in analyzing the statute of limitations issue, Midland challenges the following statement the District Court made in dicta, and asks this court to review it for possible error, "as guidance to the bench and bar:" "[s]everal district courts have held that pursuing a lawsuit which the debt collector knows or should know is time-barred violates the FDCPA." Midland interprets this statement as the District Court implying that debt collectors have a duty under the FDCPA to investigate and determine the residence of the consumer at the time the debt was incurred and at the time of the default prior to filing a collection action. We find no

7

such implication, and decline to review the District Court's statement, as doing so would amount to an advisory opinion.

We agree with the District Court that Pennsylvania has the more significant relationship to this claim, and therefore has a greater interest in its statute of limitations being applied. In contrast, New Jersey's interest in this case is very limited. The District Court properly held that Midland's state court action was time-barred, and that Mrs. Jackson was entitled to summary judgment as to liability.

For the foregoing reasons, we will affirm the Order of the District Court.