**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1153
_____

PETER MOCCO;
LORRAINE MOCCO;
FIRST CONNECTICUT HOLDING GROUP LLC, IV,
Appellants

v.

AEGIS FRUMENTO; CHICAGO TITLE INSURANCE COMPANY
_____

On appeal from the United States District Court
for the District of New Jersey
(No. 2-12-cv-01458)
District Judge:  Honorable Esther Salas

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 11, 2017

Before:  CHAGARES, JORDAN, and NYGAARD, <u>Circuit Judges</u>.

(Filed: September 25, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CHAGARES, Circuit Judge.

This case is about whether the appellants' lawsuit against the appellees violated the New Jersey entire controversy doctrine ("ECD") and merits dismissal. The District Court concluded that dismissal was warranted pursuant to the ECD. We will affirm.

I.

We write solely for the parties' benefit and thus recite only the facts necessary to our disposition. Because this case has already been before this Court in another posture, we summarize the facts as discussed in Mocco v. Frumento, 564 F. App'x 668 (3d Cir. 2014) where appropriate.

The Moccos[1] are engaged in a protracted litigation in the Superior Court of New Jersey (the "State Court Action") which was first filed in 1998 and comprises myriad parties and claims. That case involves a dispute between the Moccos and James and Cynthia Licata regarding ownership of real estate in northern New Jersey. Appellee Aegis Frumento was an attorney who represented the Licatas in some aspects of that litigation. Appellee Chicago Title issued title insurance policies to entities involved in some of the disputed real estate transactions.

The Moccos' instant claims against Frumento and Chicago Title relate to a real estate transaction in May 2006, in which the Licatas allegedly effected the sale of real estate to another entity in violation of a state court order forbidding the Licatas and other

---

[1] Although First Connecticut Holding Group LLC, IV is also an appellant, for ease of reference, we will refer to the appellants in this case as "the Moccos."

2

parties from transferring the property. The Moccos claim that Frumento and Chicago Title aided the Licatas with this scheme.[2]

In June 2011, the Moccos filed a motion for leave to amend their claims in the State Court Action to add Frumento and Chicago Title as defendants. "That attempt was the first time that the Moccos sought to add Frumento as a defendant, although they previously had twice added and twice dismissed Chicago Title as part of a quiet-title claim."[3] Mocco, 564 F. App'x at 669. The Moccos assert that it was not until several years after 2006 that the facts pointing to Frumento and Chicago Title's liability in that transaction surfaced.

The Superior Court denied the motion on August 5, 2011. "At an in-person hearing on the motion to amend, the state court denied the motion primarily on the basis of delay, reasoning that, "'at the very least, [the Moccos] had a year' to obtain 'the basic information that would give rise to at least [their] theory of liability,' and that 'bring[ing] in new parties and apply[ing] new theories on litigation that started back in 1998' would further postpone an already-delayed trial." Mocco, 564 F. App'x at 669. The Superior

---

[2] The Moccos allege that Frumento: 1) aided and abetted trespass to land, 2) conspired to slander title, and 3) conspired to perpetrate a wild deed scam. They allege that Chicago Title: 1) aided a civil conspiracy through negligent supervision, and 2) aided a civil conspiracy and the commission of a tort. Joint Appendix ("J.A.") 113-21.

[3] In 2007, as a part of a broader pleading relating to the 2006 closing, the Moccos asserted a quiet action claim against Chicago Title. J.A. 1860. This claim was voluntarily dismissed without prejudice soon thereafter, J.A. 1872-73, and re-asserted in another pleading in 2009, J.A. 1943. The Moccos agreed to dismiss this claim four months later. J.A. 1956-58.

3

Court remarked that "what seems to be clear is that this information [regarding Chicago Title's liability] was known at least a year ago," when the Moccos took the relevant depositions. Joint Appendix ("J.A.") 391-92. The court concluded, "at some point you need to know the framework of the case that's going to trial, and today's the day." J.A. 403. The Moccos did not appeal this decision. The State Court Action proceeded to the first of three trials. The first trial regarding ownership issues resulted in a disposition in part unfavorable to the Moccos. J.A. 3042-64. That decision is now on appeal.

On January 25, 2012, the Moccos filed the instant action in state court. Frumento and Chicago Title removed the case to the United States District Court for the District of New Jersey. The defendants then moved to dismiss the case on ECD grounds and for failure to state a claim. The District Court granted the motion on ECD grounds. The Moccos appealed, and this Court vacated and remanded to the District Court, noting that the District Court "applied a claim-joinder analysis instead of a party-joinder one" and on remand should do the latter "when reviewing the sufficiency of the Complaint." Mocco, 564 F. App'x at 671.

After the case was remanded, Chicago Title and Frumento each filed motions to dismiss pursuant to the ECD.[4] On April 14, 2016, the Magistrate Judge issued his Report

_____

[4] Although the motions were styled as motions to dismiss, they included information beyond the face of the complaint. Chicago Title's motion included a memorandum of law, certification by an attorney with hundreds of pages of exhibits, and a Statement of Undisputed Material Facts. J.A. 61. Frumento's motion included a memorandum of law, and a notation that it will rely on "the papers previously filed with the Court in support of Defendant Frumento's initial motion to dismiss." D. Ct. Dkt. No. 65 (Frumento Mot. Aug. 27, 2014), at 2. Frumento's initial motion included a certification by an attorney with hundreds of pages of exhibits. D. Ct. Dkt. No. 14 (Frumento Mot. Apr. 27, 2012).

4

and Recommendation ("R&R") that the matter should be dismissed pursuant to the ECD. The Magistrate Judge concluded that the Moccos "violated New Jersey Court Rule 4:5-1(b)(2) by failing to timely identify Defendants Frumento and Chicago Title as potentially necessary parties in the State Court Matters." J.A. 39. The Magistrate Judge further determined that this failure was inexcusable because it was unreasonable under the circumstances, significant judicial resources had been expended, the defendants would be substantially prejudiced, and that the delay may have been strategic. The Magistrate Judge then outlined the forms of substantial prejudice to Frumento and Chicago Title, and determined that the action was "successive" because it was filed after the State Court Action was filed. The Magistrate Judge then concluded that in any event, the action would become "successive" to the State Court Action under the ECD when the State Court Action concluded, and therefore recommended administratively terminating this action pending the resolution of the State Court Action, at which point this action would be dismissed with prejudice.

The Moccos filed their objections to the R&R on April 28, 2016, challenging the Magistrate Judge's findings regarding inexcusable delay and substantial prejudice, and asserting that the interpretation of "successive" action under the ECD was incorrect. (D.

---

The Moccos' opposition papers to both the Chicago Title and Frumento renewed motions also included certifications and numerous exhibits. The same was true for the reply filings. J.A. 62-63. The District Court issued an order acknowledging the Moccos' motion to strike the Rule 56.1 statement and instructing that "Plaintiffs may incorporate their objections to the 56.1 statement in their brief opposing Chicago Title's Motion to Dismiss." J.A. 60.

5

Ct. Dkt. No. 93.) On December 23, 2016, the District Court adopted the R&R in all respects except for the analysis regarding successive action, concluding that the action became successive when the Superior Court denied the motion to amend. The District Court thus granted the motions to dismiss in full. The Moccos timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

A threshold issue in this case, which we address infra, is whether the District Court's opinion employed a motion to dismiss standard or a summary judgment standard. Our court's review over either disposition is plenary. Allen v. DeBello, 861 F.3d 433, 437-38 (3d Cir. 2017);[5] Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014); see also Bennun v. Rutgers State Univ., 941 F.2d 154, 163 (3d Cir. 1991) ("Our review of the district court's conclusion that [the] present action was not barred by New Jersey's entire controversy doctrine is plenary.").

## III.

---

[5] Summary judgment is appropriate "if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (quotation marks and alterations omitted); see also Fed. R. Civ. P. 56(a). In evaluating an appeal from a grant of a motion to dismiss pursuant to Rule 12(b)(6), we "take as true all the factual allegations of the . . . Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions [and] . . . mere conclusory statements." Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010) (internal citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

A.

New Jersey's entire controversy doctrine dictates that "a party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999). The doctrine is an affirmative defense and "applies in federal courts when there was a previous state-court action involving the same transaction." Ricketti v. Barry, 775 F.3d 611, 613 (3d Cir. 2015) (quoting Bennun, 941 F.2d at 163). The doctrine's purposes are: "(1) complete and final disposition of cases through avoidance of piecemeal decisions; (2) fairness to parties to an action and to others with a material interest in it; and (3) efficiency and avoidance of waste and delay." Paramount Aviation, 178 F.3d at 137.

While the ECD initially only applied to joinder of claims, it now applies to joinder of parties as well. See Cogdell v. Hosp. Ctr. at Orange, 560 A.2d 1169, 1178 (N.J. 1989). The ECD, now codified as Rule 4:5-1(b)(2) of the New Jersey Rules of Court, requires the following:

> [E]ach party shall disclose in the certification the names of any non-party who should be joined in the action . . . because of potential liability to any party on the basis of the same transactional facts. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification.
>
> If a party fails to comply with its obligations under this rule, the court may impose an appropriate sanction including dismissal of a successive action against a party whose existence was not disclosed or the imposition on the noncomplying party of litigation expenses that could have been avoided by compliance with this rule. A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of

7

compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

N.J. Ct. R. 4:5-1(b)(2). Thus, the rule provides that failure to disclose alone does not require dismissal. Rather, a court imposing dismissal as a sanction must conclude three requirements are met: "(1) the action is a 'successive action;' (2) the failure to provide notice of other potentially liable parties was 'inexcusable;' and (3) the undisclosed party's right to defend the successive action has been 'substantially prejudiced' by that failure." Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co., 25 A.3d 1027, 1034 (N.J. 2011).

At its core, the ECD is "an equitable doctrine, its application [] flexible, with a case-by-case appreciation for fairness to the parties." Paramount Aviation, 178 F.3d at 137. Indeed, it is "New Jersey's 'specific, and idiosyncratic, application of traditional res judicata principles.'" Fornarotto v. Am. Waterworks Co., 144 F.3d 276, 278 (3d Cir. 1998) (quoting Rycoline Prods., Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)). Although judges are afforded discretion in shaping the remedy for a violation of Rule 4:5-1(b)(2), "in considering whether dismissal is appropriate, the court must comply with the language of [Rule 4:5-1(b)(2)] that further defines the circumstances in which that sanction is permitted." Kent Motor Cars, 25 A.3d at 445 (emphasis added).

B.

As a threshold matter, the Moccos contend that the District Court failed to apply the summary judgment standard and instead "placed the burden of proof on the Moccos and resolved all factual conflicts (and granted all inferences) in favor of Chicago Title

8

and Frumento." Mocco Br. 19. While the ECD can be asserted as grounds for a motion to dismiss, when the merits of the argument are "not apparent on the face of the complaint," it should be resolved as a motion for summary judgment.[6] Rycoline, 109 F.3d at 886 (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978)). In this case, while many of the facts the District Court relied upon are matters of judicial notice,[7] we do recognize that some issues referenced in its opinion were not, and were outside the scope of the complaint. See, e.g., J.A. 18 (referencing a fact witness who passed away); J.A. 17 (evaluating plaintiff's argument that Frumento was not a party to contracts and did not lose any money in the transactions at issue). Therefore, the proper vehicle for evaluating the ECD claim was under a summary judgment standard.

However, the District Court's opinion does not allude to whether it employed a summary judgment standard. We are cognizant of the Moccos' argument the District Court may not have viewed every factual issue in the light most favorable to the Moccos

---

[6] The Moccos do not argue that they were unaware that the District Court was treating the motion dismiss as one for summary judgment. We note that the Moccos were on notice throughout the pendency of the District Court proceedings that materials outside the scope of the complaint would be used to resolve the ECD issue, since all parties appended exhibits to their filings and the District Court ordered that the Moccos may respond to any Rule 56.1 statements by Chicago Title. See Hilfirty v. Shipman, 91 F.3d 573, 578–79 (3d Cir. 1996) (finding no error when the appellant had adequate notice of the court's intention to review the motion as one for summary judgment and was given an opportunity to respond).

[7] A court may take judicial notice of other courts' proceedings "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

9

in rendering its decision.[8]  Nevertheless, we may affirm on any basis supported by the record.  Davis v. Wells Fargo, 824 F.3d 333, 350 (3d Cir. 2016).  Therefore, we examine the three requirements under Rule 4:5-1(b)(2) to determine whether dismissal based on the ECD is warranted in this case.

IV.

A.

The first requirement for dismissing a case under the ECD is whether the case is a successive action.  On this issue, the parties' dispute is purely an issue of law.

As a threshold matter, we reject one interpretation advanced by the Moccos:  that "successive action" means an action that was filed after the completion of the initial action.  As the District Court noted, such an interpretation means "this case can never become 'successive' because it was filed during the pendency of the State Court matters." J.A. 22.  There is no support in the caselaw for such a narrow position.  Although the Moccos cite to Alpha Beauty Distributors, Inc. v. Winn-Dixie Stores, Inc., 39 A.3d 937, 942 (N.J. Super. Ct. App. Div. 2012), the court in that case did not so conclude.  Rather,

---

[8] We requested supplemental briefing from the parties on the question of whether the Moccos had forfeited this particular challenge.  We are satisfied with the Moccos' showing that, in their objections to the R&R, they argued that the Magistrate Judge's conclusions were incorrectly drawn, because doing so necessarily meant they asserted that the Magistrate Judge did not follow the summary judgment standard of drawing factual conclusions in the non-movant's favor.  See, e.g., D. Ct. Dkt. No. 93 (Objections to R&R, Apr. 28, 2016), at 1-3 (arguing the Magistrate Judge made improper "implicit conclusion[s]" in favor of the defendants), 4 (arguing that the Magistrate Judge overlooked facts in the Moccos' favor), 26 (challenging the R&R's conclusions as failing to identify specific claims that are time-barred), 28 (arguing that the Magistrate Judge overlooked evidence relating to an unavailable fact witness).

10

the court in <u>Alpha Beauty</u> only noted that an "obvious example" of a successive action is one filed after the initial action concluded. <u>Id.</u> Limiting the concept of successive action to only this "obvious example" would be illogical since that would mean a party could always avoid triggering grounds for dismissal under Rule 4:5-1(b)(2) by filing the second action before the earlier-filed action reached disposition. <u>See</u> <u>Archbrook Laguna, LLC v. Marsh</u>, 997 A.2d 1035, 1041 (N.J. Super. Ct. App. Div. 2010) (holding that such a position would "encourage the type of forum shopping and fragmentation of controversies the entire controversy doctrine was intended to preclude").

The <u>Alpha Beauty</u> decision does suggest, however, that a later-filed action would not be considered "successive" if the earlier-filed action had not yet reached disposition. The Appellate Division concluded that a later-filed action in state court was not successive to an earlier-filed federal action that was set for, but had not proceeded, to trial. 39 A.3d at 942. In <u>Archbrook Laguna</u>, the Appellate Division clarified that "the entire controversy doctrine could be applied once the first action was concluded depending upon how the first action ended." 997 A.2d at 1041.

The question before us is whether the State Court Action has "concluded" in relevant respects, thus making the instant action a successive one. The Magistrate Judge suggested that the conclusion of a state court proceeding occurs when that court issues a judgment on the merits, but added that allowing the instant action to proceed while waiting for the state court judgment would be a waste of time and resources in contravention of the ECD's principles. J.A. 51-52. Therefore, the Magistrate Judge

11

recommended administratively terminating the instant action pending the result of the State Court Action.

The District Court took a different approach and instead reasoned that the "end" has already occurred, since "once the Superior Court barred Plaintiffs from asserting the civil conspiracy and aiding-and-abetting claims against Defendants in the State Court Matters, Plaintiffs were foreclosed from asserting those claims against Defendants in any subsequent litigation." J.A. 25. Therefore, the Court dismissed the action rather than waiting until the conclusion of the State Court Action.

We agree with the District Court's reasoning on this particular record, where the Superior Court's denial of the motion to amend (which was not appealed) was the death knell for Mocco's claims against Frumento and Chicago Title in the State Court Action. Even if the Moccos' appeal of the State Court Action's first trial were to result in their favor, and regardless of what happens in the second and third trials in that action, their claims against Frumento and Chicago Title could not be revived in the State Court Action. Given the underpinnings of the ECD — that is, avoidance of piecemeal litigation, fairness, and efficiency, Paramount Aviation, 178 F.3d at 137 — we must conclude that in this particular situation, the instant action was successive to the State Court Action.

B.

We next examine whether the Moccos' failure to effect timely notice of Frumento and Chicago Title as potentially liable parties under Rule 4:5-1(b)(2) was inexcusable. In Hobart Bros. Co. v. National Union Fire Insurance Co., 806 A.2d 810, 818-19 (N.J.

12

Super. Ct. App. Div. 2002), the court provided a non-exhaustive list of factors to consider to make this determination. Relying on Hobart Bros., the District Court determined that the relevant factors in the instant case are: 1) whether the Moccos' delay in filing the motion to amend was reasonable, 2) to what extent judicial resources had been expended in the meantime, 3) whether Frumento and Chicago Title would be substantially prejudiced, and 4) whether delay was potentially strategic.

As to the element of reasonableness of the delay, the Moccos contend that the District Court should have considered "the state court's findings of discovery obstructionism by Chicago Title, which, among other things, hindered the Moccos' ability to learn the facts giving rise to their claims." Mocco Br. 26.

We agree with the District Court that this does not constitute a legitimate excuse for the delay in this case.[9] Construing all facts in favor of the Moccos, and accepting for the purposes of this motion that discovery obstacles delayed their ability to identify Frumento and Chicago Title, there is no genuine factual dispute that the Moccos had knowledge of the claims underlying the instant case as of mid-2010. The Moccos acknowledge that by February 2010, they were taking depositions in order to confirm "whether [they] should assert claims directly against Chicago Title." Mocco Br. 20 (citing J.A. 2096). The Moccos also note that an April 2010 deposition of a Chicago

---

[9] Although in the following analysis we consider all of the facts proffered and evaluate the District Court's decision de novo and do not afford any preclusive effect to the Superior Court's factual findings, we nevertheless note that the Moccos are taking a second bite at the apple after receiving an unfavorable decision from the Superior Court on essentially the same issue.

Title representative revealed that an agent of Chicago Title issued title insurance in a sum far above the policy's limit.  See Mocco Br. at 11-12 (citing J.A. 2118-23).  This is precisely what the Moccos assert in their complaint in the instant case.  J.A. 119 ("Because Chicago Title failed to enforce its own rules and procedures, its 'rogue agent[]' Horizon . . . w[as] able to issue over $40 mil. of Lender title insurance which . . . was essential to consummation of the frauds that were committed against the Moccos and others.").  Similarly, the Moccos acknowledge that "through a review of the parties' email" from 2010 Chicago Title productions, it was able to identify "the substantial role of Mr. Frumento in counseling and persuading the participants in the May 2006 closing." Mocco Br. 21.

Although the Moccos make much of the assertion that Chicago Title delayed discovery and that the statute of limitations on their claims in this case have not expired, those issues were not pertinent to the question before the District Court:[10]  whether the one-year delay in alerting the Superior Court that Chicago Title and Frumento should be added was unreasonable.  Based on the undisputed facts, we agree with the District Court and the Superior Court that it was.

The Moccos do not contest the District Court's conclusion that the State Court Action has commanded substantial judicial resources.

---

[10] Moreover, we also agree with the District Court that the relevant issue is not whether the Moccos needed time to draft pleadings and sort through their materials.  Under Rule 4:5-1(b)(2), the Moccos needed only to file and serve a simple notice.

14

The third factor the District Court considered is substantial prejudice. Substantial prejudice is both a factor for considering inexcusable delay as well as a consideration under Rule 4:5-1(b)(2). See Hobart Bros., 806 A.2d at 819. We explore that issue infra, and for similar reasons conclude that Frumento and Chicago Title suffered substantial prejudice.

Finally, while the Moccos emphasize the District Court's statements regarding "the possibility that Plaintiffs could have strategically delayed to add Defendants in the State Court Matters," J.A. 13, we conclude that a determination as to whether there was strategic delay is unnecessary to the determination of inexcusable delay in this case. Even if there was no intentional conduct by Mocco to postpone asserting claims against Frumento and Chicago Title, we would still determine that the delay was inexcusable.

C.

Dismissal under Rule 4:5-1(b)(2) requires a showing of substantial prejudice, which "in this context means substantial prejudice in maintaining one's defense. Generally, that implies the loss of witnesses, the loss of evidence, fading memories, and the like." Mitchell v. Charles P. Procini, D.D.S., P.A., 752 A.2d 349, 354 (N.J. Super. Ct. App. Div. 2000); cf. Kent Motor Cars, 25 A.3d at 1038. The District Court concluded that the substantial prejudice to Frumento and Chicago Title took three forms: first, that they would be unable to influence the outcome of the State Court Action; second, that they would be time-barred from asserting any contract or tort claims in the State Court Action; and third, that they would lack the benefit of certain discovery evidence as a result of the delay. The Moccos challenge each of these conclusions.

15

As to Frumento's inability to participate in the State Court Action and to assert counter- or cross-claims, the Moccos advance no meritorious challenge on appeal. Since the alleged misconduct took place in 2006, Frumento is time-barred from asserting contract or tort claims against alleged co-conspirators. Excluded from the State Court Action, Frumento also could not cross-examine witnesses regarding potentially damaging testimony about him. Considering both facts together, we conclude that Frumento would suffer substantial prejudice to his defense.

As to Chicago Title, the parties disagree as to whether Chicago Title was able to participate in the State Court Action. We recognize the Moccos' argument that Chicago Title is involved in the State Court Action in its capacity as subrogee, and we note that there is lack of clarity as to whether its role is sufficient to alleviate any prejudice. We need not resolve that issue, however, because we agree with the District Court that Chicago Title has been deprived of the ability to assert claims against third parties, such as the Licatas, arising from the 2006 closing. We also agree that the death of Kenneth Williams, who was lead counsel for an entity which made a claim under a title policy issued by Chicago Title regarding the properties at issue in this case, constitutes prejudice to Chicago Title. Even considering the fact that Williams was deposed in June 2007,[11] by

---

[11] We note that before the District Court, the Moccos argued that Williams's law partner Todd Galante could testify as to the same issues. See D. Ct. Dkt. No. 93 (Mocco Objections to R&R, Apr. 28, 2016), at 29. The District Court rejected that argument, concluding that it could not "replace Mr. Williams's lost testimony by virtue of the fact that [Galante] was Mr. Williams's law partner." J.A. 20. It noted that Galante was a bankruptcy attorney and was not in constant communication with the Moccos' counsel, as Williams was. J.A. 19-20. Now, the Moccos apparently assert that a number of other people could testify in Williams's stead. Mocco Br. 41. This argument was forfeited and

16

the Moccos' own admission, at that time there was no allegation that Chicago Title aided a civil conspiracy through negligent supervision and through other tortious acts — the claims against Chicago Title at issue today. Thus, we conclude that Chicago Title also incurred substantial prejudice.

D.

The Moccos contend that the District Court should have imposed a lesser sanction than dismissal. Its entire analysis focused on offsetting the loss of Williams's testimony. Mocco Br. 40-43. While dismissal is a "last resort," the R&R noted that "[n]o sanction could alter Defendants' inability to participate in the State Court matters, revive Defendants' lost claims or restore witnesses' dulled memories." J.A. 47. Thus, the Magistrate Judge and the District Court concluded that dismissal was the only appropriate sanction in this case. On this record, that conclusion was properly drawn.

V.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

we will not consider it on appeal. See DIRECTV Inc. v. Seijas, 508 F.3d 123, 125 n.1 (3d Cir. 2007).

17